IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                     :
ELLEN MURRAY                         :        3:11 CV 629 (JGM)
                                     :
v.                                   :
                                     :
TOWN OF STRATFORD, ET AL.            :
                                     :        DATE: JULY 25, 2014
-------------------------------------------------x
```

<u>RULING ON MULTIPLE MOTIONS IN LIMINE</u>

      Familiarity with this litigation is presumed, but for the sake of clarity, a limited recitation of the procedural history follows.  On April 20, 2011, plaintiff Ellen Murray, a now-retired Assistant Fire Chief in the Stratford Fire Department, commenced this action against defendants Town of Stratford, and James Miron, individually and in his official capacity as the Mayor of the Town of Stratford  (Dkt. #1), followed by an Amended Complaint on September 19, 2011. (Dkt. #29). On February 8, 2012, the parties consented to trial before this Magistrate Judge and the case was transferred from U.S. District Judge Janet Bond Arterton to this Magistrate Judge.  (Dkt. #37)  On May 3, 2012, this Magistrate Judge filed a Ruling on Defendant Town of Stratford's Motion to Dismiss the Fourth Cause of Action, granting defendant Town's Motion on grounds that plaintiff failed to allege that she was subjected to "discipline" within the meaning of CONN. GEN. STAT. § 31-51q. (Dkt. #51;  <u>see</u> Dkt. #30; <u>see also</u> Dkts. ##21, 24-27, 31-32).   Thereafter, on July 10, 2012, defendants filed their Answers and Affirmative Defense.  (Dkts. ##56-57).

      On February 11, 2014, this Magistrate Judge filed a Ruling on the Parties' Cross Motions for Summary Judgment and on Plaintiff's Motions to Strike ["Summary Judgment Ruling"], in which defendant Town of Stratford's Motion for Summary Judgment was granted in part and denied in part, defendant Miron's Motion for Summary Judgment was granted in

part and denied in part, and plaintiff's Motion for Partial Summary Judgment was denied.[1] Murray v. Town of Stratford, 2014 WL 558872 (D. Conn. Feb. 11, 2014).  Jury selection and a jury trial are scheduled to commence on August 11, 2014.  (See Dkt. #114).

Pending before the Court are seven Motions in Limine.  On June 19, 2014, defendant Miron filed his first Motion in Limine (Dkt. #120),[2] and the next day, defendant Miron filed a Motion in Limine to Exclude Evidence as to Damages (Dkt. #124).[3]  On June 24, 2014, plaintiff filed her Motion in Limine (Dkt. #127), and on the same day, defendant filed his third Motion in Limine (Dkt. #128), his fourth Motion in Limine (Dkt. #129), his fifth Motion in Limine (Dkt. #130),[4] and his sixth Motion in Limine (Dkt. #131).

On July 11, 2014, defendant filed his objection to plaintiff's Motion in Limine (Dkt. #137), and on July 14, 2014, plaintiff filed her briefs in opposition to defendant's six Motions in Limine.  (Dkts. ##140-45; see Dkts. ##136, 138).[5] On July 24, 2014, defendant filed his reply briefs to his first, second, third, fourth, and fifth Motions in Limine (Dkts. ##147-51), and on the same day, plaintiff filed her reply brief.  (Dkt. #152).

For the reasons stated below, plaintiff's Motion in Limine (Dkt. #127) is granted in part and denied in part; defendant's first Motion in Limine (Dkt. #120) is granted;

---

[1]Plaintiff's Motions to Strike were also denied.  2014 WL 558872, at *9.

[2]Attached as Exh. A is a copy of excerpts of plaintiff's deposition transcript, taken on March 21, 2012 ["Plaintiff's Depo."].

[3]Attached to defendant's Motion are two exhibits: the same excerpt from plaintiff's deposition (Exh. A); and a copy of Plaintiff's Damages Analysis, dated September 29, 2011 (Exh. B).

[4]Attached as Exh. A is a copy of excerpts of defendant Miron's deposition testimony, taken on May 29, 2012 ["Miron Depo."].

[5]Attached as Exh. A to plaintiff's brief in opposition to defendant's Motion in Limine to Exclude Evidence as to Damages (Dkt. #141) is an affidavit of plaintiff, sworn to July 11, 2014 ["Plaintiff's Aff't"]; this affidavit is also Exh. A to Dkt. #142.

defendant's second Motion in Limine (Dkt. #124) is granted in part and denied in part; defendant's third Motion in Limine (Dkt. #128) is denied without prejudice to renew at a later time; defendant's fourth Motion in Limine (Dkt. #129) is granted in part; defendant's fifth Motion in Limine (Dkt. #130) is granted; and defendant's sixth Motion in Limine (Dkt. #131) is granted in part.

## I. DISCUSSION

### A. STANDARD FOR MOTIONS IN LIMINE

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996)(citation & internal quotations omitted).  In ruling on a motion in limine, the court makes a "preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." Highland Capital Mgmt, L.P. v. Schneider, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005)(citations & internal quotations omitted).  "A district court's in limine ruling 'is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer.'" Id., quoting Luce v. United States, 469 U.S. 38, 41 (1984)(additional citation omitted).

### B. PLAINTIFF'S MOTION IN LIMINE (Dkt. #127)

In this Motion, plaintiff seeks to exclude: (1) evidence of this Court's dismissal of certain claims on summary judgment, including all claims other than plaintiff's First Amendment retaliation claims; (2) evidence or testimony concerning any details of the existence of or amount of plaintiff's husband, Thomas Murray's, pension with the defendant Town of Stratford; (3) evidence or argument suggesting that taxpayers, including without

limitation, the jurors, would be responsible for any monetary award to plaintiff; and (4) evidence of promotions and hiring outside the Stratford Fire Department.  (Dkt. #127, at 1-2; see also id. at 3-9; see also  Dkt. #152, at 1-5).

### 1. EVIDENCE OF PLAINTIFF'S CLAIMS DISMISSED ON SUMMARY JUDGMENT

In her Amended Complaint, plaintiff alleged that defendant Town discriminated against her because of her gender, in their refusal to promote her, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Civil Rights Act of 1991, and CONN. GEN. STAT.   § 46a-60(a)(1)(First and Third Counts); defendant Town has discriminated against her based on gender plus race in violation of Title VII (Second Count); defendant Town has taken affirmative disciplinary actions in violation of CONN. GEN. STAT. § 31-51q in punishing plaintiff for the exercise of her right to free speech and free association under the First Amendment to the United States Constitution and/or by exercising her rights under Sections 3, 4, or 14 of Article first of the Connecticut Constitution (Fourth Count); defendant Miron has retaliated against plaintiff under 42 U.S.C. § 1983 for her exercise of her right of association pursuant to the First Amendment (Fifth and Sixth Counts); and defendant Miron deprived her of equal protection, in violation of 42 U.S.C. § 1983, through his illegal conduct, in his official and individual capacities (Seventh and Eighth Counts).  On May 3, 2012, the Fourth Count was dismissed in this Magistrate Judge's Ruling on Defendant Town of Stratford's Motion to Dismiss (Dkt. #51), and First, Second, Third, Seventh and Eighth Counts were dismissed in the Summary Judgment Ruling, leaving only plaintiff's First Amendment retaliation claim against defendant Miron in his official and individual capacities

regarding plaintiff's union activities (Fifth and Sixth Counts). 2014 WL 558872, at *10-24.[6]

Defendant contends that it "does not currently intend to present evidence of or refer to" the Summary Judgment Ruling, but "submits that such evidence could become relevant" and is best dealt with at trial.  (Dkt. #137, at 1-2).  Additionally, defendant contends that there is "some efficacy in informing the jury about what this case is not about: that it is not about age, sex, gender, or race; that it is not about violation of wage and hour laws; and that it is not about free speech."  (Id. at 2).  This Court disagrees.  Identifying what this case is "not about" only serves to confuse the jury.  See FED. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues . . . . ").  Similarly, evidence that this Court dismissed several of plaintiff's previous claims is not relevant to plaintiff's remaining claim, and will likely confuse the jury and distract them from the central issues remaining in this case.

## 2. AMOUNT OR EXISTENCE OF PLAINTIFF'S HUSBAND'S PENSION

Plaintiff contends that evidence of the pension of her husband, Thomas Murray, a retired member of the Stratford Fire Department, is irrelevant and would be prejudicial to plaintiff, particularly because Thomas Murray is not a party to this case, and because he receives an increased annual pension award due to a settlement of a workers' compensation award.  (Dkt. #127, at 6-8).  Defendant asserts that Thomas Murray's pension is directly relevant to plaintiff's proposed stipulations of fact that defendant Miron was concerned about

---

[6]The Fifth Count was also dismissed as it pertained to plaintiff's allegation that defendant Miron retaliated against her in response to her prior lawsuit.  2014 WL 558872, at *22-23.

Plaintiff also seeks to exclude evidence of plaintiff's prior litigation with defendant Town (Dkt. #127, at 5-6); similarly, in his fifth Motion in Limine, defendant moves to exclude such evidence.  (Dkt. #130; see also Dkt. #137, at 2; Dkt. #145).  Accordingly, the parties agree, and this Court holds, that such evidence regarding Howley v. Town of Stratford, 217 F.3d 141 (2d Cir. 2000) is precluded from admission at this trial.  See also note 8 infra.

costs facing the Town when considering a candidate for the position of Deputy Chief, plaintiff and Thomas Murray were both members of the union, were both at the same level of Assistant Fire Chief at that time, and now both are receiving substantial pensions from the Town of Stratford.  (Dkt. #137, at 3-5).  In her reply brief, plaintiff reiterates that the existence and/or amount of Thomas Murray's pension serves only to prejudice plaintiff.  (Dkt. #152, at 4).

"Evidence of wealth . . . is generally inadmissible in trials not involving punitive damages." Tesser v. Bd. of Educ. of the City Sch. Dist. of the City of NY, 370 F.3d 314, 318 (2d Cir. 2004)(multiple citations & internal quotations omitted). "Nevertheless, such evidence may be admitted to impeach the testimony of a witness who opens the door to the subject. Of course, to be admitted for this purpose, the wealth evidence must actually be inconsistent with the witnesses's testimony." Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 266 (2d Cir. 1999)(citations, internal alterations & internal quotations omitted), cert. denied, 528 U.S. 1119 (2000).  Defendant contends, however, that evidence of wealth may be admitted, subject to "safeguards[.]" (Dkt. #137, at 3-4).  In support of his contention, defendant relies on United States v. Quattrone, 441 F.3d 153 (2d Cir. 2006), a decision that bears no similarity to the case at hand.  In that case, the Second Circuit held that the district court acted within its discretion in finding that evidence of defendant's compensation "was relevant to [his] motive to protect his reputation . . . [,]" and the references to such compensation were used for the "limited purpose of establishing a motive to obstruct [the Government's investigations of an initial public offering of stock] and could not be used to convict Quattrone simply because of his wealth." Id. at 187.  Under those circumstances, the Second Circuit held that "[w]hile evidence of compensation, wealth, or lack thereof can unduly

6

prejudice jury deliberations, that evidence may be admitted where other safeguards are employed such as limiting instructions or restrictions confining the [G]overnment's reference to that wealth."  Id.

In this case, plaintiff has made a claim for punitive damages in her Sixth Count  (Dkt. #29, ¶ 84), but what is at issue in this motion is the wealth of plaintiff and/or of her husband, not that of defendant. As defendant acknowledges, plaintiff held the same employment status as her husband in that she was also a member of the Stratford Fire Department, at the same level of plaintiff, Assistant Chief, and they were both union members.  Thus, evidence of two "substantial" pensions will only serve to prejudice plaintiff. (Dkt. #137, at 4). Additionally, in light of the enhancements made to Thomas Murray's pension, the admission of Thomas Murray's pension would also serve to confuse the jury, and will be prejudicial to plaintiff.

### 3. EVIDENCE THAT ANY VERDICT AWARDED WOULD BE PAID BY THE TAXPAYERS

Plaintiff seeks to exclude defendant from arguing that any verdict returned to plaintiff would be paid by the taxpayers.  (Dkt. #127, at 8-9).  Defendant contends that the Town of Stratford's residents are not included in the jury pool for the New Haven division (where this case will be tried), and defendant Miron's cost containment policies are "a major issue in this trial[.]" (Dkt. #137, at 6-9).  In her reply brief, plaintiff "withdraws any objection to . . . [d]efendant[] putting on evidence that the Town of Stratford will be obligated to pay any judgment against [defendant] and that is the real party in interest in the official capacity suit." (Dkt. #152, at 4).

Despite plaintiff's reversal of her position in her reply brief, her original contention is the correct one -- "[c]losing remarks that appeal to jurors' pecuniary interests as taxpayers

are, of course, generally improper[,]"  Moore ex rel Estate of Grady v. Tuelja, 546 F.3d 423, 429 (7th Cir. 2008)(citation omitted)(regarding defense counsel's statement that "The city is not a random amorphous entity.  It's you. We're talking about tax dollars here."), cert. denied, 556 U.S. 1153 (2009), as are "so-called 'golden rule' argument[s] which ask[ ] the jurors to place themselves in the position of a party." U.S. v. Palma, 473 F.3d 899, 902 (8th Cir. 2007). A "golden rule" argument "is universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence."  Id. (citations & internal quotations omitted).   Any argument to the jury that a verdict awarded would be paid by taxpayers, would place the jurors, as taxpayers themselves, even if they are not taxpayers of the Town of Stratford, in the position of considering their personal interest.

### 4. TESTIMONY FROM CURRENT POLICE CHIEF OF STRATFORD

Plaintiff contends that defendant Miron should not be permitted to present evidence regarding the hiring and promotion of persons outside the Stratford Fire Department, and specifically, regarding the hiring of the Police Chief. (Dkt. #127, at 9).   Defendant appropriately counters that plaintiff alleges in her Amended Complaint that:

> 31. In February 2009, Stratford hired Randi Frank Consultants and Slavin Nationwide Management Consultants . . . to perform a nationwide search for candidates to fill three positions: fire chief, deputy fire chief and police chief.

> 32. Randi Frank Consultants and Slavin Management Consultants are executive recruiting firms who advertise their ability to assist municipalities in recruiting a more diverse pool of candidates. . . .

> . . .

> 41. On June 9, 2009, Stratford hired a black male from outside the police department to fill the position of Deputy Police Chief.

(Dkt. #29, at 10, 13). In her reply brief, plaintiff asserts that she has had no discovery regarding the candidates for the Deputy Police Chief position; it is "simply irrelevant whether [the hiree] was unionized in his prior department[;]" and it is "grossly unfair and prejudicial to [plaintiff] to open this new area of testimony within weeks of trial." (Dkt. #152, at 4-5).

Contrary to plaintiff's arguments in her reply brief, she was the party who introduced the issue of the Deputy Police Chief into the litigation. Plaintiff is correct that she does not bear the burden of proving that defendant's "anti[-]union animus extends to every union member. . . ." (Id. at 5)(emphasis added). In contrast, Deputy Police Chief (now current Police Chief) Patrick Ridenhower serves in a high level position in the Stratford Police Department, a position which is reasonably analogous to that to which plaintiff had applied.

Plaintiff complains that she has "had no discovery regarding the candidates for the Deputy Police Chief position, whether any of the candidates were members of the . . . Stratford Police Union, . . . [or] whether Chief [Ridenhower] was an active union member or simply obligated to be a union member to work in his prior department. . . ." (Id.). The fact that all parties chose to ignore this potential issue in their discovery is beyond the Court's control.

The remaining issues for trial are limited to plaintiff's allegation of First Amendment retaliation by defendant Miron because of her association and participation in the union. (Fifth and Sixth Counts). Thus, the hiring of a Deputy Police Chief is relevant to plaintiff's remaining claims to the limited extent relating to his union membership, involvement or activities in the union, and the consideration thereof during the interview process. However, in that defendant intends to call Chief Ridenhower as a witness (Dkt. #121, at 34), plaintiff is entitled to take a brief deposition of him on these limited issues prior to trial.

## C. DEFENDANT'S FIRST MOTION IN LIMINE (Dkt. #120)

Defendant moves for an order precluding plaintiff from referencing, arguing, or presenting evidence of a pattern or practice of promoting from within to the positions of Fire Chief and Deputy Fire Chief in the Fire Department at the Town of Stratford.  (Dkt. #120). Defendant contends that "plaintiff does not claim that she suffered damages because she was not promoted to the position of Fire Chief[,]" so therefore any claim for damages for not being promoted to that position "is not of consequence[,]"[7] "any claim relating to the Fire Chief's position is irrelevant," there is no pattern or practice or disparate impact claim in this case, and such pattern and practice evidence would violate the Mayor's discretionary hiring authority under the Town Charter and the principal that implied contracts are not enforceable against municipalities.  (Id. at 1-6).  Plaintiff responds that defendant has overstated the Mayor's authority under the Town Charter; the practice of promoting from within is relevant to plaintiff's damages claim, as her denied promotion harmed her career by denying her the experience needed to qualify for the next promotional opportunity; and the practice of promoting from within is relevant to motive.  (Dkt. #140, at 2-9).[8]  In his reply brief, defendant contends that plaintiff's argument is "inconsistent[t]" as plaintiff agrees that the Mayor's discretion is limited by the Town Charter, but then asserts that "defendant had no choice but to hire . . . plaintiff because of an informal pattern of practice of hiring from

---

[7]The damages argument is addressed in Section I.D. infra.

[8]In her response (Dkt. #145) to defendant's fourth Motion in Limine (Dkt. #130), plaintiff also contends that while she requests that the Court issue an order directing the parties to exclude any testimony or evidence regarding plaintiff's previous litigation, see note 6 supra, she requests that the Court allow testimony and evidence regarding promotional practices of the Town and the Fire Department.  (Dkt. #145, at 1-3; see also Dkt. #152, at 2-4).  In his reply brief, defendant appropriately notes that the Town is no longer a party to this case, and that all the cases upon which plaintiff relies are distinguishable.  (Dkt. #151, at 1-4).   For the reasons stated in I.C. infra, evidence of a pattern or practice of promoting from within is precluded.

within."  (Dkt. #147, at 1-2).

## 1. MAYOR'S AUTHORITY UNDER THE TOWN CHARTER

As a "general principle[] regarding municipal charters[,]" defendant Miron had no authority beyond that expressly granted in the Town Charter.  Fennel v. City of Hartford, 238 Conn. 809, 813, 681 A.2d 934, 937 (Conn. 1996).  "It has been well established that a city's charter is the fountainhead of municipal powers . . . . Agents of a city, . . . have no source of authority beyond the charter. . . ." Id. (multiple citations & internal quotations omitted). The Mayor, as an agent of the Town, has "powers . . . measured and limited by the express language in which authority is given or by the implication necessary to enable [him] to perform some duty cast upon [him] by express language."  Id. at 814, 681 A.2d at 937 (citations & internal quotations omitted).  The excerpts of the Town Charter provided to the Court in the parties' briefs provide that among the Mayor's duties is the "[s]election, appointment and hiring of department heads, except as otherwise provided in this Charter[,]" and the "[a]dopting as well as updating a written policy for recruiting, screening, investigating and hiring all Town employees in accordance with approved job descriptions." (Dkt. #120, at 3; Dkt. #140, at 3).  Additionally, the Mayor holds the power to appoint the "Directors[,]" which include the Fire Chief, Chief of Police, Administrator of Emergency Medical Services, Human Resources, . . . and the heads of each administrative department[,]" and such Directors shall "be chosen on the basis of his or her general executive and administrative experience and ability and of his or her education, training and experience in the class of work which he or she is to administer."  (Dkt. #140, at 3-4). While the Charter explicitly details the authority of the Mayor to appoint a Fire Chief, and the limitations related thereto, the Charter does not grant the Mayor the authority to appoint a

11

Deputy Fire Chief or other subordinate employees.   Additionally, the Charter does not detail the Mayor's authority with respect to the position of Deputy Fire Chief, other than to comply with the Charter's mandate that the Mayor must develop a policy for "recruiting, screening, investigating and hiring[.]" (See Dkt. #120, at 3; Dkt. #140, at 3). Thus, defendant's argument that the Mayor has the decision to hire and fire within the Town's departments is not a sufficient ground to preclude testimony about the Town's alleged pattern or practice.

As both sides acknowledge, however, this is not a Title VII disparate impact case where plaintiff is attempting to prove her case by using the employer's pattern and practice of mistreating a protected group.  (Dkt. #120, at 5-6; Dkt. #140, at 9). Rather, plaintiff is trying to establish the opposite: that she did not benefit from a pattern or practice of promoting from within, and she was denied that benefit as retaliation for her union activity. Notwithstanding this argument, while plaintiff points to the career paths of several of her colleagues to argue that the failure to promote her to Deputy Chief in 2009 has denied her a promotion to Fire Chief in 2011 when the then-current Fire Chief retired, this contention is entirely speculative.  Although plaintiff directs the Court's attention to others who were promoted from within, defendant appropriately notes that such a pattern could not apply to all who held the position of Assistant Chief, as plaintiff did. There are several Assistant Chiefs, and only one Deputy Chief.  Accordingly, evidence of a hiring pattern and practice is not relevant.  FED. R. CIV. P. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

D. DEFENDANT'S SECOND MOTION IN LIMINE (Dkt. #124)

In this Motion, defendant seeks to exclude: (1) evidence as to any claim of

constructive discharge; (2) any claim for future damages; and (3) any claim for compensatory damages; defendant seeks to exclude evidence, argument or reference to a calculation of future damages as no expert has been disclosed.  (Dkt. #124, at 1-13).   In response, plaintiff contends that  it is of no moment that she did not assert a claim of constructive discharge as a material adverse employment action in her Title VII discrimination claim because plaintiff is asserting this in her First Amendment retaliation claim; the Court "should decline [d]efendant['s] invitation to exclude evidence as to [plaintiff's] damages" on the basis of the two cases cited by defendant;[9] a sanction for exclusion of evidence of compensatory damages should be refused; and plaintiff does not need an expert as she does not claim the benefit of inflation.  (Dkt. #141, at 2-14).  In his reply brief, defendant reasserts that "[n]owhere in either [the Fifth or Sixth Count] does plaintiff seek damages for emotional distress[,]" and she does not provide authority that she can recover special or general damages.  (Dkt. #149, at 1-2).

## 1. CONSTRUCTIVE DISCHARGE

In the First Amendment context, a public employment action is adverse if it would deter a similarly situated individual of ordinary firmness from exercising her constitutional rights.  Smith v. Da Ros, 777 F. Supp. 2d 340, 354 (D. Conn. 2011)(citations omitted).  "[C]onstructive discharge is not necessary to establish a prima facie First Amendment retaliation claim[,]" but "an adverse employment action must be established to have occurred." Carone v. Mascolo, 573 F. Supp. 2d 575, 590, n.7 (D. Conn. 2008).  In the context of a First Amendment claim, "adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand[,]" but "lesser actions may

_____

[9]Plaintiff does not elaborate on her argument.

also be considered adverse employment actions." Id. (multiple citations & internal quotations omitted); see Ventura v. Town of Manchester, No. 3:06 CV 630(EBB), 2008 WL 4080099, at *19-20 (D. Conn. Sept. 2, 2008)(denying summary judgment on First Amendment retaliation claim as genuine issue of fact existed as to whether there was a causal connection between plaintiff's speech and defendants' conduct, and whether plaintiff, who voluntarily resigned, was constructively discharged.)

In her Amended Complaint, plaintiff alleges that she suffered an adverse employment action in defendant's refusal to promote her to the position of Deputy Chief.  In her damages analysis, dated September 29, 2011, plaintiff seeks back pay and front pay, and she attaches spreadsheets reflecting the difference between the Stratford Fire Chief salary, and the Naugatuck Deputy Chief salary, yet at no time until this brief in opposition did plaintiff assert a claim of constructive discharge. Now, in support of her claim of constructive discharge, plaintiff attaches a new affidavit, detailing, for the first time in this case, that the adverse action she suffered in defendants' failure to promote her to Deputy Chief ultimately led to a constructive discharge in mid-June 2010, more than a year before she filed her Amended Complaint in this case, when she retired from the Stratford Fire Department and accepted a position in another department.  (Dkt. #141, Exh. A, Plaintiff Aff't ¶ 25).

Plaintiff relies on Barclay v. Michalsky, 451 F. Supp. 2d 386 (D. Conn. 2006), in support of her claim that her constructive discharge claim exists by virtue of her First Amendment retaliation claim.  However, her reliance on the Barclay decision is misplaced, as in that case, at the time that plaintiff brought her action, she alleged "several . . . adverse employment actions: discipline/administrative leave, demotion and 'reeducation' programming, transfer . . . , and constructive discharge." 451 F. Supp. 2d at 397.  In the

14

summary judgment context, U.S. District Judge Janet Bond Arterton found that those actions constituted adverse employment actions. Id. at 398. In this case, the only adverse employment action alleged by plaintiff was the failure to promote plaintiff to the Deputy Chief position. See Summary Judgment Ruling, 2014 WL 2014 WL 558872, at *19. In her brief in support of her own Motion for Summary Judgment, plaintiff agreed: "It is undisputed that the [d]efendants refused to promote Murray . . . . Therefore, Murray suffered an adverse employment action. For the foregoing reasons, Murray has proved the second element of her First Amendment retaliation claim." (Dkt. #79, Brief, at 18).  Moreover, at her deposition, plaintiff was specifically asked: "Q. So the . . . retaliation that you're complaining about . . . [is only] to the extent it concerns whether or not you were hired [as Deputy Chief] - - you're not making any claims of discrimination past that point?"  Plaintiff answered simply: "No." (Dkt. #124, Exh. A, Plaintiff's Depo at 145).  Plaintiff cannot now seek damages on a claim not included in this case.  Accordingly, plaintiff is prevented from arguing, presenting and/or introducing evidence regarding any claim of constructive discharge.

## 2. EMOTIONAL DISTRESS DAMAGES

Additionally, plaintiff contends that defendant's effort to define her claim as "relating to only the economic damage that is measured by the difference in income between that of a Stratford Assistant Chief and a Stratford Deputy Chief[,]" is "inaccurate" because plaintiff "has plead emotional distress, humiliation, loss of promotional opportunities, damage to reputation, as well as claims for attorney[']s fees and punitive damages." (Dkt. #141, at 4).[10] However, in the Fifth and Sixth Counts, the only remaining counts in this case, plaintiff

---

[10]Plaintiff relies on a newly sworn to affidavit, filed along with her brief in opposition, in which she claims that once she "realized that [she] stood no chance of being promoted to Deputy Chief in Stratford[,]" and that "[t]here was nothing [she] could do to overcome the pervasive anti-union sentiment and the humiliation and frustration of reporting to someone who was bringing

asserts the following claim of damages: "Murray has suffered and will continue to suffer damage caused by defendant's illegal conduct including loss of wages and benefits and long-term economic detriment due to lost seniority, loss of status in her profession and lost career options."  (Dkt. #29, ¶¶ 78, 83).  At no time did she assert a claim for emotional distress, and thus such claim is not part of this case.  (See Dkt. #149, at 1-2).[11]

### 3. FRONT PAY

Similarly, regarding the front pay claim, the only remaining claim in this case is plaintiff's failure to be promoted to Deputy Fire Chief, for which claim plaintiff may be entitled to compensatory damages; however, plaintiff premises her claim for front pay solely on her claim that she was constructively discharged.  As discussed in Section I.D.1. supra, plaintiff does not have a claim for constructive discharge.  Accordingly, plaintiff is prevented from arguing, presenting and/or introducing evidence regarding front pay.

### 4. COMPENSATORY DAMAGES

Defendant Miron seeks to preclude plaintiff from presenting evidence of compensatory damages because "she failed to provide any evidence or information on such

---

nothing to the Department but was a daily reminder of the cost of being a union member[,]" she "made the difficult decision to leave the department [she] had dedicated almost [twenty-eight] years to."  (Dkt. #141, Exh. A, Plaintiff's Aff't, ¶¶ 24-25; see also id. ¶¶ 15-24).

[11]As discussed above, in the Fifth and Sixth Counts, plaintiff alleges that she "has suffered and will continue to suffer damage caused by defendant's illegal conduct including loss of wages and benefits and long-term economic detriment due to lost seniority, loss of status in her profession and lost career options."  (Dkt. #29, ¶¶ 78, 83).  Defendant observes that plaintiff "fails to provide any authority for the proposition that 'long-term economic detriment due to lost seniority, loss of status in her profession and lost career options' are recoverable as either special damages or general damages."  (Dkt. #149, at 2).

In her Amended Complaint, plaintiff alleges that "[defendant] retaliated against [her], by denying her promotion to Deputy Fire Chief for which she was qualified because of her participation in union activity."  (Dkt. #29, ¶¶ 77, 82).  Her damages are limited to the difference in pay and benefits between her position as an Assistant Fire Chief, and the position to which she claimed she was denied, the position of Deputy Fire Chief.

damages to [d]efendants." (Dkt. #124, at 6-10).  Plaintiff provided her Damages Analysis

on September 29, 2011 (see Dkt. #124, Exh. B), in which she seeks "(1) compensatory

damages pursuant to 42 U.S.C. § 2000e-5(g), [CONN. GEN. STAT.] § 31-51q, and pursuant to

42 U.S.C. § 1983[.]" Plaintiff attached to that Damages Analysis three spreadsheets: one for

the Stratford Fire Chief salary from 2011 to 2025; one for the Naugatuck Deputy Chief salary

from 2011 to 2025; and one for the difference between the Stratford Fire Chief salary and

the Naugatuck Deputy Chief salary from 2011 to 2025.  (Dkt. #124, Exh. B). This disclosure

does not comport with Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which requires that

parties disclose

> a computation of each category of damages claimed by the disclosing party
> – who must also make available for inspection and copying as under Rule 34
> the documents or other evidentiary material, unless privileged or protected
> from disclosure, on which each computation is based, including materials
> bearing on the nature and extent of injuries suffered.

This disclosure must be made "at or within [fourteen] days after the parties' Rule 26(f)

conference unless a different time is set by stipulation or court order."  FED. R. CIV. P.

26(a)(1)(C).  Rule 26 also provides that a "party is not excused from making its disclosures

because it has not fully investigated the case or because it challenges the sufficiency of

another party's disclosure . . . . " FED. R. CIV. P. 26(a)(1)(E).

As U.S. Magistrate Judge Holly B. Fitzsimmons held just two months ago, "This

particular rule does merely require a plaintiff to describe its damages in general terms, such

as 'compensatory,'" as plaintiff does in this case, but rather, this rule requires that a plaintiff

"as  best as the party is able at an early stage in the case – . . . provide a computation of

each category of damages, and . . .  produce the documents on which that computation is

based." Lima v. PHL Variable Ins. Co., No. 12 CV 1122(WWE), 2014 WL 2002485, at *1 (D.

Conn. May 15, 2014), quoting Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)(additional citations omitted). The "[f]ailure to provide damages computation documents may result in exclusion of damage calculation evidence or expert testimony regarding damage calculations at trial." Lima, 2014 WL 2002485, at *1 (citations & internal quotations omitted).

Plaintiff responds that she provided nearly seven hundred pages of documents, which included her contract with the Naugatuck Fire Department, her tax returns, and her pension statement from Stratford. (Dkt. #141, at 7). Additionally, plaintiff contends that the salary information from her position as Assistant Chief, and the salary information for the positions of Deputy Chief and Fire Chief of Stratford, are paid by defendants pursuant to written contracts that are public records, and the contract from the City of Naugatuck, detailing the salary and benefits for the Deputy Chief position, was provided to defendants. (Id.). Thus, "[e]very assumption used in the calculation was included in the disclosed Financial Analysis." (Id. at 7, 13).

Plaintiff's response is similar to that offered by the plaintiff, and rejected by the Second Circuit, in Design Strategy, Inc. v. Davis, 469 F.3d 284, 293 (2d Cir. 2006). In that case, plaintiff Design Strategy, Inc. ["Design"] did not provide "any specific computation of lost profits nor [did it] provide[ ] any evidence on the basis of which such computation [of lost profits] might be made." Id. The district court ruled that Design's failure to abide by FED. R. CIV. P. 26(a)(1)(c) meant that the evidence of lost profits would not be admissible. Id. Design objected, claiming that "it had, in fact turned over evidence from which a computation of damages could be made – its financial records[,]" and that "it was not obligated to provide a calculation of damages because of the calculation of damages from

these records would be 'simple arithmetic.'" <u>Id.</u>  The district court held, however,  that the reality "is quite the opposite[,]" and informed Design that "saying that you provided documents to the defendant doesn't go far enough in meeting your burden of proof on this issue[,]" and constitutes a failure to comply with Rule 26(a).  <u>Id.</u> at 293-95.  Affirming the district court, the Second Circuit explained, "by its very terms Rule 26(a) requires more than providing − without any explanation − undifferentiated financial statements; it requires a 'computation,' supported by documents." <u>Id.</u> at 295.

Additionally, while plaintiff argues that defendant Miron should have requested more information earlier, as "[t]his motion is the first and only notice of any perceived deficiency in [p]laintiff's discovery production or responses[,]" (Dkt. #141, at 8)(emphasis omitted), Rule 26(a) "requires a party to provide a computation of any category of damages voluntarily, i.e., 'without awaiting a discovery request[.]'" <u>Design Strategy</u>, 469 F.3d at 295.   As the Advisory Committee Notes to Rule 26(a)(1)(c) provide, the rule

> imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34.  A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34.

FED. R. CIV. P. 26 Advisory Committee Notes to 1993 Amendments; <u>Design Strategy</u>, 469 F.3d at 296.  Accordingly, plaintiff's failure to provide the computation and basis for her claimed compensatory damages is a violation of Rule 26.

Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions . . . .

FED. R. CIV. P. 37(c)(1).  As Judge Arterton ruled five years ago, "[t]he Court has 'wide discretion' to determine whether, how, and how severely to sanction an offending party." Rogers v. Apicella, 606 F. Supp. 2d 272, 283 (D. Conn. 2009), citing Design Strategy, 469 F.3d at 294; Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)(additional citations omitted). "The purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence[,]" however, "preclusion of evidence is a harsh remedy, [that] should be imposed only in rare situations." Ritchie Risk-Linked Strategies, 280 F.R.D. at 156 (multiple citations & internal quotations omitted).   In deciding whether evidence should be precluded under Rule 37(c), courts should consider the following four factors: "(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of . . . the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Id. at 157 (internal quotations omitted), quoting Softel, Inc. v. Dragon Medical & Scientific Comms., Inc., 118 F.3d 955, 961 (2d Cir. 1997), cert. denied, 532 U.S. 1020 (1998).

"The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified, and that it was harmless." Ritchie Risk-Linked Strategies, 280 F.R.D. at 159 (multiple citations omitted).  "Harmless[ness] means an absence of prejudice to the defendant."  Id. (citation & internal quotations omitted).  In this case, plaintiff has not offered any explanation for the failure to comply with Rule 26(a)(1)(A)(iii), this evidence is integral to plaintiff's damages claim, and conversely,

to defendant's exposure at trial, and there is no likelihood of a continuance as this case is scheduled for a jury trial in a mere two weeks.  Plaintiff contends that defendant has suffered no prejudice, and neither plaintiff, nor her counsel acted in bad faith or willfully, and thus there is "no basis for the imposition of sanctions. . . ."  (Dkt. #141, at 9-10).  While there is no evidence that plaintiff or her counsel acted in bad faith or willfully,[12] this Court disagrees with plaintiff's contention that defendant has suffered no prejudice. This case is on the eve of trial and defendant has been deprived the opportunity to fully prepare for such trial as plaintiff's failure to comply with Rule 26(a) has deprived him the opportunity to be informed of, and to prepare his response to, plaintiff's damages claim.  **On or before August 4, 2014**, plaintiff shall produce her damages calculation, and all underlying documents, in compliance with Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and consistent with this Ruling.

"Even where preclusion is not ordered under Rule 37, it is generally appropriate, at a minimum, to require a party who has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking disclosure and/or in seeking discovery sanctions."  Ritchie Risk-Linked Strategies, 280 F.R.D. at 157 (multiple citations omitted).  Defendant may submit a Motion for Attorney's fees to recover fees spent on this motion and the reply brief, and for a reasonable number of hours spent preparing for his response to plaintiff's damages claim. See id. ("Monetary sanctions are appropriate to punish the offending party for its actions [and] to deter the litigant's conduct, sending the message that egregious conduct will not be tolerated.")(citations & internal quotations

---

[12]"[A]lthough a 'bad-faith' violation of the Rule 26 is not required in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply." Design Strategy, 469 F.3d at 296 (emphasis in original).

omitted).

## 6. CALCULATION OF FUTURE DAMAGES WITHOUT AN EXPERT

In light of the Court's conclusion in Section I.D.3. supra that plaintiff's damages are limited to the date she retired, the Court need not address defendant's argument regarding the requirement of expert testimony for future damages calculation.

## E. DEFENDANT'S THIRD MOTION IN LIMINE (Dkt. #128)

The Summary Judgment Ruling included the following:

> Once the Assistant Chiefs became part of the firefighter's union, they, including plaintiff and her husband, negotiated for the inclusion of overtime pay in pension benefit calculations, which calculation method increased the Town's financial liability to retiring firefighters. (Miron Depo. at 172, 175, 177). Plaintiff testified at her deposition that she, and the three other Assistant Chiefs, were told "to be careful what we wished for . . ., which [plaintiff] took as a threat against the assistant chiefs that joined [the union.] They wanted to take some benefits away from us." (Plaintiff's Depo. at 102; see id. at 107-10). Similarly, Greg Anderson, the firefighter's union Vice President since 2010, averred that he heard David Dunn, an outside labor consultant for the Town, make this statement, and that Town's Director of Human Resources, Winterbottom, repeated the statement immediately thereafter. (Anderson Aff't ¶¶ 5, 8). Dunn acknowledges that he stated words to the effect of "Be careful of what you wish for, you may get it[,]" which was not meant "to intimate that there would be repercussions or retaliation[,]" but which "had to do with certain privileges and rights that the assistant chiefs enjoyed as non-union members that were not available to union members." (Dunn Aff't ¶¶ 6-8). He denies that Winterbottom ever made this statement. (Id. ¶ 10). However, in addition to plaintiff and Anderson, Daniel Hunsberger, the attorney for the union, avers that at one of the meetings involving the Assistant Chiefs' negotiations to be re-incorporated into the collective bargaining unit, Winterbottom warned the Assistant Chiefs, "Be careful what you wish for because you just might get it." (Hunsberger Aff't ¶¶ 3-4, 9). Like plaintiff and Anderson, Hunsberger "understood this statement to be a threat that if the Assistant Chiefs continued to seek union membership, that the Town would make sure they regretted it." (Id. ¶ 10).

2014 WL 558872, at *20 (footnote omitted).   Accordingly, as held in the Ruling, "[t]his disputed question of fact remains an issue for the jury." Id.  Thus, this Court concluded that:

In light of the evidence posited about plaintiff's and her husband's union activity, the perceived threat made by the Director of Human Resources of the Town, and defendant Miron's position regarding cost containment measures and the Assistant Chiefs re-joining the union in 2008, there exists a question of fact as to the impact plaintiff's union involvement and activity had on the ultimate decision not to promote plaintiff. Summary judgment cannot be granted in favor of defendant or plaintiff on this issue.

Id. at *22.

Defendant now seeks to preclude evidence, argument, or reference to the statement, "be careful what you wish for, you may get it[,]" related variations thereof, and the subjective states of mind of individuals who allegedly heard and interpreted this statement. (Dkt. #128, at 1-8).  Plaintiff counters that testimony regarding statements made by Dunn and Winterbottom are statements by  party opponents under FED. R. EVID. 801(d)(2), and thus are not hearsay; whether the statement is viewed by the witnesses as a threat is relevant; and the statement is relevant as direct evidence of retaliatory animus.  (Dkt. #143, at 4-6). In his reply brief, defendant reiterates that defendant Town is no longer a party; plaintiff's subjective state of mind does not control the analysis; and it is the intent and understanding of the speaker that is relevant to establishing evidence of a retaliatory animus. (Dkt. #148, at 1-3).

Defendant is correct that these statements do not fall within Federal Rule of Evidence 803(3), the "state of mind exception to the hearsay rule[,]" in that the statements do not express an intent by the same person to perform a certain act in the future. U.S. v. Lea, 131 F. App'x 320, 321-22 (2d Cir. 2005), citing United States v. Best, 219 F.3d 192, 198 (2d Cir. 2000)("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."), cert. denied, 532 U.S. 1007 (2001); Shelden v. Barre Belt Granite Employer Union Pension Fund, 25 F.3d 74, 79 (2d Cir. 1994)("[U]nder

[Rule 803(3)], the existence of the plan or intention may be proven by evidence of the person's own statements as to its existence.")(emphasis in original)(citation and internal quotations omitted).  Additionally, Rule 803(3) "expressly excludes from the operation of the rule a statement of belief to prove the fact believed. . . . [T]he state-of-mind exception does not permit the witness to relate any of the declarant's statement as to why he held that particular state of mind, or what he might have believed[.]" U.S. v. Cohen, 631 F.2d 1223, 1225 (5th Cir. 1980)(footnote omitted), rehearing denied, 636 F.2d 315 (5th Cir. 1981).

Plaintiff points to the affidavit of Dunn in which he averred that he stated, "in regards to the application of the assistants chiefs to join the union, words to the effect of: 'Be careful what you wish for, you may get it.'" (Dkt. #83, Exh. B, Dunn Aff't ¶ 6).  Dunn then explained the factual basis for his statement, which was uttered in his capacity as a labor consultant for the Town at that time: "[t]he meaning of this statement had to do with certain privileges and rights that the assistant chiefs enjoyed as non-union members that were not available to union members." (Id. ¶ 7).  Rule 801(d)(2) of the Federal Rules of Evidence "specifically provides that a statement is not hearsay if it is offered against a party and is either '(A) the party's own statement, in either an individual or a representative capacity or . . . (D) a statement by the party's agent . . . concerning a matter within the scope of the agency or employment, made during the existence of the relationship.'"  Spigel v. Schulmann UAK Mgmt Co, Inc., 604 F.3d 72, 82 (2d Cir. 2010).

In 2009, the late U.S. District Judge Mark R. Kravitz issued a decision in Ciacciarella v. Bronko, 613 F. Supp. 2d 262 (D. Conn. 2009), that is instructive to the issue at hand.  In Ciacciarella, the plaintiff was the former paralegal of the part-time town counsel of Naugatuck, Donald J. Zehnder, who allegedly was discharged from her job at the insistence

of town Mayor, Michael Bronko, because plaintiff had supported defendant Bronko's opponent in the mayoral race.  <u>Id.</u> at 264-65.  Two probate clerks had overheard defendant Zehnder tell a friend that defendant Bronko threatened Zehnder that he could only continue as town counsel if he fired plaintiff.  <u>Id.</u> at 267.  Judge Kravitz held that the testimony of the two probate clerks was admissible under Rule 801(d)(2)(A) as against defendant Zehnder, but reserved decision until trial about whether their testimony was admissible against defendant Bronko.  <u>Id.</u> at 267-69 & n.3.

In this case, statements attributed to Dunn, and repeated by Winterbottom, the Town's Director of Human Resources, are likely admissible under Federal Rule of Evidence 801(d)(2), who, given their positions, presumably are defendant Miron's agents, with regard to a matter within the scope of their agency or employment.  <u>See also Tremalio v. Demand Shoes, LLC,</u> No. 3:12 CV 357(VLB), 2013 WL 5445258, at *7 ( D. Conn. Sept. 30, 2013).[13] At the final pretrial conference scheduled for July 29, 2014, the Magistrate Judge will require counsel to submit additional filings on this hearsay issue.

<u>F. DEFENDANT'S FOURTH AND SIXTH MOTIONS IN LIMINE (Dkts. ##129, 131)</u>[14]

The fourth and sixth Motions <u>in Limine</u> address testimony relating to plaintiff's qualifications.  In the fourth motion, defendant moves for an order <u>in limine</u> precluding plaintiff from offering evidence, referring to or arguing that she was the "better" or "more"

---

[13]Additionally, it is possible that these comments may be used as evidence of a retaliatory animus held by the individuals who made the comments.  <u>See Farrar v. Town of Stratford,</u> 537 F. Supp. 2d 332, 355 & n.6 (D. Conn. 2008)(a "reasonable finder of fact could find that" statements to plaintiff that "It's open season[,]" and that "You filed too many grievances. You ought to be glad you got a job[,]" are "direct evidence that [plaintiff's] supervisors harbored retaliatory animus against him[.]")(footnote omitted).  In this case, defendant's intent is at issue if those who uttered this statement were acting as his agents.

[14]Defendant's Fifth Motion <u>in Limine</u> is <u>granted</u>. <u>See</u> note 6 <u>supra.</u>

qualified candidate of the four finalists for the position of Deputy Fire Chief.  (Dkt. #129, at 1-3).  In the sixth motion, defendant moves for an in limine order preventing plaintiff from arguing, presenting and/or introducing evidence that she worked on the "busiest engine at the busiest fire house."  (Dkt. #131, at 1-4, quoting Dkt. #29, Amended Complaint ¶ 36).

Defendant contends that he, as Mayor, "ha[d] the discretion under the Town Charter to hire whomever he wanted to the position of Deputy Fire Chief, regardless of their respective qualifications."  (Dkt. #129, at 3).  Defendant also contends that asserting that plaintiff worked on the "busiest engine at the busiest fire house[,]" is too vague of a statement to be relevant.  (Dkt. #131, at 1-4).

In her brief in opposition to defendant's fourth Motion, plaintiff includes excerpts from the Town Charter that were in effect at that time relevant to this case.  (See Dkt. #144, at 4-5).  As discussed above, these excerpts provide that among the Mayor's duties is the "[s]election, appointment and hiring of department heads, except as otherwise provided in this Charter[,]" the "[a]dopting as well as updating a written policy for recruiting, screening, investigating and hiring all Town employees in accordance with approved job descriptions[,]" and the appointment of the "Directors[,]" which include the Fire Chief, Chief of Police, Administrator of Emergency Medical Services, Human Resources, . . . and the heads of each administrative department."  (Id.).  The Mayor shall choose the Directors "on the basis of his or her general executive and administrative experience and ability and of his or her education, training and experience in the class of work which he or she is to administer." (Id.).  Plaintiff posits that nowhere in the Charter is there a "specific grant of authority to the Mayor to hire a Deputy Fire Chief without regard to [his or her] qualifications[.]"  (Id. at 6). Additionally, as plaintiff observes, defendant's assertion of an unlimited discretion to hire is

a "previously undisclosed special defense."  (Id. at 2; see also Dkt. #142, at 2-4).

In his reply brief, defendant clarifies that, "[o]bviously,  . . . defendant's discretion must be exercised, like all discretion, within the bounds of the law[,]" and "[o]nce the four finalists were selected, the Mayor had the discretion to weigh the various relevant factors as he saw fit."  (Dkt. #150, at 1-2 & n.1).

In his Answer, defendant Miron asserted nine special defenses to the Fifth and Sixth Counts, most notably, that

> 1. The Fifth Cause of Action is barred because, even if the Plaintiff were able to demonstrate that her association touched on a matter of public concern, the decision to hire another individual instead of the Plaintiff was based on legitimate, non-discriminatory factors including but not limited to the candidates respective merits, experience, education, skills, responses and performance during the interview process.
>
> . . .
>
> 1. The Sixth Cause of Action, alleging violations of 42 U.S.C. § 1983 against the Defendant Miron in his individual capacity, is barred because, even if the Plaintiff were able to demonstrate that her association touched on a matter of public concern, the decision to hire another individual instead of the Plaintiff was based on legitimate, non-discriminatory factors including but not limited to the candidates respective merits, experience, education, skills, responses and performance during the interview process.

(Dkt. #57, at 12-13)(emphasis added).  Similarly, in the Summary Judgment Ruling, summary judgment was denied on these Counts on grounds that:

> A reasonable jury could conclude, in light of the evidence, that the decision not to promote plaintiff was based only upon the qualifications and performances of the candidates, or a reasonable jury could equally conclude defendants considered plaintiff's union involvement along with the candidates' qualifications and performances, and that defendants refused to promote plaintiff, less than a year after the Town's contentious negotiations with the firefighter's union, in retaliation for her involvement.

2014 WL 558872, at *22 (part emphasis in original, additional emphasis added)(citation omitted).  Additionally, as observed in the Summary Judgment Ruling, "a review of the

resumes and qualifications of Kepchar and Maffett reveal their qualifications and experience, which exceed that possessed by plaintiff.  However, defendant Miron testified that plaintiff was 'obviously, very qualified[.]'" Id. (citation omitted).  Plaintiff cannot now be precluded from offering evidence to counter defendant's special defenses, nor can plaintiff be precluded from presenting the evidence upon which this Court relied in holding that on these remaining issues, a question of fact exists for a jury.

As defendant acknowledges in his reply brief, plaintiff's qualifications and performance as a candidate are relevant, and defendant "has no objection to . . . plaintiff attempting to offer competent, relevant proof to support her claims that the other two finalists for the position of Deputy Fire Chief . . . did not meet the requirements set forth in the job description . . . of Deputy Fire Chief, for whatever weight the jury assigns to that type of proof, as evidence of an intent to retaliate." (Dkt. #150, at 2). That said, the terms "better" or "more" and "busiest engine . . . at the busiest firehouse" are vague without the necessary context.  Plaintiff may introduce evidence of her qualifications and performance, and contrast such with the qualifications of the other candidates so that the jury may reach a determination as to plaintiff's qualifications in relation to the other candidates.  Similarly, plaintiff may offer objective evidence to demonstrate the activity of the engine and firehouse in which she worked, to allow the jury to reach a conclusion as to the demands placed on this engine and firehouse, and particularly, the demands placed on plaintiff working on that engine, in that firehouse.

## II. CONCLUSION

For the reasons stated above, plaintiff's Motion in Limine (Dkt. #127) is granted in part and denied in part to the extent provided in Section I.B supra;

defendant's first Motion <u>in Limine</u> (Dkt. #120) is <u>granted</u>;

 defendant's second Motion <u>in Limine</u> (Dkt. #124) is <u>granted in part and denied in part to the extent provided in Section I.D supra</u>;

defendant's third Motion <u>in Limine</u> (Dkt. #128) is <u>denied without prejudice to renew at a later time</u>;

defendant's fourth Motion <u>in Limine</u> (Dkt. #129) is <u>granted in part</u>;

defendant's fifth Motion <u>in Limine</u> (Dkt. #130) is <u>granted</u>; and

 defendant's sixth Motion <u>in Limine</u> (Dkt. #131) is <u>granted in part</u>.

**<u>On or before August 4, 2014</u>**, plaintiff shall produce her damages calculation consistent with this Ruling, and all underlying documents, in compliance with Federal Rule of Civil Procedure  26(a)(1)(A)(iii).  Defendant may submit a Motion for Attorney's Fees, in accordance with Section I.D.3 <u>supra</u>.

Dated this 25th day of July, 2014, at New Haven, Connecticut.


   /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge