IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
--------------------------------------------------------x
                                                        :
ELLEN MURRAY                                            :        3:11 CV 629 (JGM)
                                                        :
v.                                                      :
                                                        :
JAMES MIRON, Individually, and in his                   :
official capacity as Mayor of the Town of               :        DATE: JULY 1, 2015
Stratford                                               :
--------------------------------------------------------x
```

RULING ON DEFENDANT'S MOTION FOR SANCTIONS (Dkt. #183) AND DEFENDANT'S
CORRECTED RULE 11 MOTION FOR SANCTIONS (Dkt. #193)

Familiarity with this litigation is presumed, but for the sake of clarity, a brief recitation

of the rulings relevant to the pending motions follows.  On February 11, 2014, this Magistrate

Judge filed a lengthy Ruling on the Parties' Cross Motions for Summary Judgment and on

Plaintiff's Motions to Strike, in which defendant Town of Stratford's Motion for Summary

Judgment was granted in part and denied in part, defendant Miron's Motion for Summary

Judgment was granted in part and denied in part, and plaintiff's Motion for Partial Summary

Judgment was denied ["February 2014 Ruling"].  Murray v. Town of Stratford, 996 F. Supp.

2d 90 (D. Conn. 2014).  Jury selection and a jury trial were scheduled for August 11, 2014

(see Dkt. #114), and on July 25, 2014, this Magistrate Judge filed a lengthy Ruling on

Multiple Motions in Limine ["July 2014 Ruling"], 2014 WL 3700982 (D. Conn. July 25, 2014).

A final pre-trial conference was held on July 29, 2014, at which time counsel advised

the Court that they were just recently made aware that defendant Miron had a bankruptcy

matter pending in the United States Bankruptcy Court in Bridgeport.  See In re James R.

Miron, No. 13-50950.  (See Dkts. ##158-59).  Six days later, this Magistrate Judge issued

an Order Administratively Closing File Pending Further Action in Bankruptcy Court (Dkt.

#160), pending notification from counsel that the U.S. Bankruptcy Court had lifted the

automatic stay or had otherwise granted permission for this litigation to continue.  The case was closed the same day.

On August 8, 2014, four days after this case closed, plaintiff filed her first Motion for Reconsideration of the July 2014 Ruling.  (Dkt. #161; see Dkts. ##162-63, 170).  On November 13, 2014, following a telephone conference call with this Court (see Dkts. ##164-65), plaintiff filed a Notice of the United States Bankruptcy Court Order reopening this case and granting relief from the automatic stay.  (Dkt. #165).

Following the reopening of the case (see Dkt. #166), plaintiff re-filed her second Motion for Reconsideration of the July 2014 Ruling (Dkt. #169; see also Dkts. ##170, 175-76), and on December 19, 2014, plaintiff filed her Motion for Leave to Amend Complaint. (Dkt. #177; see Dkts. ##178-79). On February 12, 2015, this Magistrate Judge filed her Ruling on Plaintiff's Motion for Reconsideration and on Plaintiff's Motion for Leave to Amend Complaint ["February 2015 Ruling"], 2015 WL 630957 (D. Conn. Feb. 12, 2015), denying both motions.  On February 23, 2015, plaintiff filed her Second Amended Complaint ["Second Am. Compl."]. (Dkt. #182).

On March 9, 2015, defendant filed the pending Motion for Sanctions (Dkt. #183; see Dkts. ##184, 186-89),[1] in response to which plaintiff filed her brief in opposition on March 30, 2015.  (Dkt. #185).  On April 10, 2015, defendant filed his reply brief  (Dkt. #190), and on April 29, 2015, plaintiff filed a sur-reply brief.  (Dkt. #199; see Dkts. ##194-95).

On April 28, 2015, defendant filed a Corrected Rule 11 Motion for Sanctions (Dkt. #193; see Dkts. ##192, 196-98).  On May 8, 2015, plaintiff filed her brief in opposition (Dkt.

---

[1]Attached to defendant's Motion is plaintiff's Amended Damages Analysis, dated February 23, 2015, and accompanying exhibits.

#200),[2] and ten days later, defendant filed his reply brief. (Dkt. #201).

For the reasons set forth below, defendant's Motion for Sanctions (Dkt. #183) is

<u>denied</u>, and defendant's Corrected Rule 11 Motion for Sanctions (Dkt. #193) is <u>denied</u>.

I. PENDING MOTIONS

<u>A. MOTION FOR SANCTIONS (Dkt. #183)</u>

Defendant seeks an "entry of an order of sanctions against . . .  plaintiff pursuant to

Rule 37(b)(2)(A)(ii)[,]"[3] as plaintiff has failed to comply with the Court's July 2014 Ruling

"requiring that [plaintiff] produce her damages calculation and all underlying documents

related thereto with respect to her damages claim."  (Dkt. #183, at 1).  Specifically,

defendant contends that plaintiff has "willful[ly] . . . fail[ed] to . . . provide any computation

or documentation with respect to her claims for punitive damages, attorneys' fees, costs, and

pre and post-judgment interest in her Amended Damages Analysis[.]" (<u>Id.</u> at 3).[4]

---

[2]Attached to plaintiff's brief are copies of unpublished case law (Exh. A), and copy of correspondence between counsel, dated April 27, 2015 (Exh. B).

[3]Defendant moves for sanctions for plaintiff's "failure" to "provide an amended damages analysis pursuant to Rule 26(a)(1)(A)(iii)[.]" (Dkt. #183, at 1).  Sanctions for failure to comply with Rule 26(a) are governed by Rule 37(c)(1) which provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . ., the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  Additionally, the court, upon motion "may order payment of the reasonable expenses, including attorney's fees, caused by the failure;" FED. R. CIV. P. 37(c)(1)(A); "may inform the jury of the party's failure;" FED. R. CIV. P. 37(c)(1)(B); and "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." FED. R. CIV. P. 37(c)(1)(C).

Rule 37(b)(2)(A)(ii) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders[,]" including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]"

[4]Defendant observes that "[a]n additional purpose of damages analyses is to help guide pretrial proceedings, including settlement conferences[,]" which the parties attended on April 17, 2015 before U.S. Magistrate Judge William I. Garfinkel.  (Dkt. #190, at 1, n.1).  Defendant contends that plaintiff's failure to disclose this information is prejudicial to both defendant and to the Court.  (<u>Id.</u>).

3

In the July 2014 Ruling, plaintiff was ordered to submit an Amended Damages Analysis for her compensatory damages, itemizing the "difference in pay and benefits between her position as an Assistant Fire Chief, and the position to which she claimed she was denied, the position of Deputy Fire Chief." 2014 WL 3700982, at *8, n.11, 16; see also id. at *11 ("plaintiff shall produce her damages calculation, and all underlying documents, in compliance with Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and consistent with this Ruling.").[5]  This order was repeated in this Court's February 2015 Ruling, wherein plaintiff was ordered "[o]n or before February 23, 2015[,]" to "produce her damages calculation, and all underlying documents, in compliance with FED. R. CIV. P. 26(a)(1)(A)(iii)[.]" 2015 WL 630957, at *7.

In response to defendant's motion, plaintiff contends that she complied with the July 2014 Ruling by providing "the precise, itemized mathematical computation for her compensatory damages" (Dkt. #185, at 5; see Dkt. #183, Exh. 1), and she restated her claims for statutory attorney's fees, costs, pre and post-judgment interest and punitive damages.  (Id.). Plaintiff contends that her claims for attorney's fees, costs, and pre and post-judgment interest are recoverable pursuant to federal statute, and her claim for punitive damages is not subject to Rule 26's disclosure requirements.  (Dkt. #185, at 6-13).  In his reply brief, defendant contends that it "seems entirely inconsistent to claim that certain categories of damages do not need to be quantified, or are not even damages . . . when those categories were enumerated by the plaintiff in her own damages analysis, which she admits is being filed pursuant to Rule 26(a)."  (Dkt. #190, at 3).

---

[5]Additionally, as provided in the July 2014 Ruling, defendant "may submit a Motion for Attorney's [F]ees to recover fees spent on [his] motion and the reply brief, and for a reasonable number of hours spent preparing for his response to plaintiff's damages claim." Id. at 12 (citation omitted).

Rule 26(a)(1)(A)(iii) provides in relevant part:

> [A] party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . .

FED. R. CIV. P. 26(a)(1)(A)(iii).[6]  A party who fails to comply with the disclosure rules may be sanctioned under Rule 37(c), which rule provides, in relevant part, that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).  The Rule further provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders[,]" including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" FED. R. CIV. P. 37(b)(2)(A)(ii).[7]

---

[6]See note 3 supra.

[7]In support of his contention that plaintiff failed to comply with the disclosure rules by failing to provide damages calculations for her claims for punitive damages, costs, pre and post-judgment interest and attorney's fees, defendant relies on Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147 (S.D.N.Y. 2012). (See Dkt. #190, at 3-4).  In that case,  plaintiffs asserted in their Complaint a demand for compensatory damages, attorneys' fees and costs, prejudgment and post-judgment interest, and such other relief as the Court may deem just and proper, and later, in responses to Interrogatories, demanded compensatory damages, expectation damages, including lost profits, prejudgment and post-judgment interest, and attorneys' fees.  280 F.R.D. at 153-54.  At issue in that case was not the failure to itemize the demand for attorneys' fees, and pre and post-judgment interest, but the fact that plaintiffs did not disclose until nearly a year after discovery had been completed, and more than two years after the closing of bankruptcy proceedings, that their compensatory damages included "over $12 million . . . that [p]laintiff claimed to have paid in costs and fees related to the bankruptcy process."  Id. at 154 (internal quotations & citation omitted). In that case, the court's finding that plaintiffs' Rule 26(a)(1)(A)(iii) damages computation "was inadequate," related to plaintiffs' belated disclosure of a portion of the compensatory damages sought, namely, the over $12 million dollars of bankruptcy

1. PUNITIVE DAMAGES

From the outset of this case, defendant has been on notice that plaintiff has asserted a claim for punitive damages "in an amount not less than five million dollars[.]" (Dkt. #2, at 25)("Punitive damages in an amount not less than five million dollars[]"); (Dkt. #29, at 28)("Punitive damages in an amount not less than five million dollars pursuant to C.G.S. § 31-51q[]); (Dkt. #182, at 16)("Punitive damages in an amount not less than five million dollars[]); see Williams v. Boulevard Lines, Inc., No. 10 Civ. 2924(DF), 2013 WL 5652589, at *4-7 (S.D.N.Y. Sept. 30, 2013)(plaintiff precluded from seeking punitive damages when plaintiff's Rule 26(a) disclosure and supplemental Rule 26(a) disclose "failed to make any mention, whatsoever, of punitive damages[,]" so that defendants "had no way of knowing that [p]laintiff would seek punitive damages at trial[]" in excess of $24 million); Danes v. Senior Residential Care of Am., Inc., No 04-C-594, 2006 WL 3876378, at *1 (E.D. Wis. Jan. 5, 2006)(waiver of punitive damages demand when plaintiff affirmatively stated in supplemental Rule 26(a) disclosure that punitive damages were not being sought, only to later insert a demand for punitive damages in final pretrial report).  "The purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence."  Williams, 2013 WL 5652589, at *3 (multiple citations omitted).  In this case, as opposed to the Williams and Danes matters, defendant has been on notice of plaintiff's punitive damages

---

related costs and fees.  Id. at 158.  The court did not address plaintiffs' itemization or lack thereof of their demand for attorneys' fees or prejudgment and post-judgment interest.  Accordingly, this case has no bearing on the issues currently before this Court.

Additionally, defendant relies on Hoffman v. Construction Protective Servs., Inc., 541 F.3d 1175 (9th Cir. 2008) in support of his argument that "late disclosure [is] not harmless[.]" (Dkt. #190, at 8).  However, in that case, plaintiff provided no damages calculations for each individual opt-in plaintiff prior to the pretrial conference, Hoffman, 541 F.3d at 1178-80; the ruling did not address a failure to provide a calculation of punitive damages, attorney's fees, or pre and post-judgment interest, which are at issue in this pending motion.

demand for the entire duration of this litigation.

In addition to the foregoing, "courts have generally recognized that . . . punitive damages are typically not amenable to the type of disclosures contemplated by Rule 26(a)(1)(A)(iii), and have held that the failure to disclosure a number or calculation for such damages was substantially justified." Evenson v. Palisades Collection, LLC, No. 2:13 CV 1226, 2014 WL 5089429, at *4 (S.D. Ohio Oct. 9, 2014), citing, inter alia, Scheel v. Harris, No. 3:11 17 DCR, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012)(punitive damages are not amenable to the initial disclosure requirement); E.E.O.C. v. Wal-Mart Stores, Inc., 276 F.R.D. 637, 639-40 (E.D. Wash. 2011)(denying motion to compel computation of plaintiff's emotional distress and punitive damages on the basis that they are issues for the fact finder, but noting that plaintiff may be foreclosed from suggesting a specific amount to the jury for emotional distress damages if plaintiff fails to supplement its Rule 26 disclosures with a computation of damages); Sandoval v. Am. Bldg. Maintenance Indus., Inc., 267 F.R.D. 257, 281-83 (D. Minn. 2007)(same)(additional citation omitted). Moreover, while defendant contends that "a review of the joint pre-trial memo does not disclose any witnesses or documents that the plaintiff will offer to prove the defendant's personal finances[,]" (Dkt. #190, at 7), there is "well established precedent in this Circuit [that] it is the defendant's burden to show that his financial circumstances warrant a limitation [of a punitive damages] award." Patterson v. Balsamico, 440 F.3d 104, 122 (2d Cir. 2006)(internal quotations & multiple citations omitted); see also Motorola Credit Corp. v. Uzan, 509 F.3d 74, 81-82, 85 (2d Cir. 2007)(district court did not err in awarding punitive damages of $1 billion dollars as

defendants "have failed to demonstrate that the award exceeds their ability to pay.").[8]

2. STATUTORY DAMAGES

a. ATTORNEY'S FEES AND COSTS

Similar to plaintiff's continuous demand for punitive damages, plaintiff has repeatedly stated her demand for attorney's fees pursuant to 42 U.S.C. § 1988, and interest and costs. (Dkt. #2, at 25; Dkt. #29, at 29; Dkt. #182, at 16).  A plaintiff's demand for attorney's fees, pre and post-judgment interest and costs are addressed by the court once a plaintiff has prevailed in an action.

An award of attorney's fees under 42 U.S.C. § 1988 is an issue for the court to decide. Section 1988 provides that "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b).[9] "Determining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge," Husain v. Springer, 579 F. App'x 3, 6 (2d Cir. 2014)(alterations, internal quotations & citation omitted), and "[r]egardless of when attorney's fees are requested, the court's decision of entitlement to fees . . . require[s] an inquiry separate from the decision on the merits[;] [it is] an inquiry that cannot even commence until one party has

---

[8]While this is not the juncture to address a punitive damages award as no such award has been made, it is worth noting that the ratio between compensatory and punitive damages must be proportional; some twenty-four years ago, the U.S. Supreme Court upheld a punitive damages award of "more than [four] times the amount of compensatory damages." Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24 (1991). Conversely, twelve years ago, the U.S. Supreme Court held that a punitive damages award  of $145 million on a $1 million award of compensatory damages was "grossly excessive[,]" and violated the defendant's due process rights.  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416-21, 424-29 (2003).  With plaintiff's alleged compensatory damages as low as they are (see Dkt. #183, Exh. 1), any substantial award of punitive damages is likely to be the subject of an additional motion.

[9]Similarly, plaintiff may seek an award for costs.  See FED. R. CIV. P. 54(d)(1); Dattner v. Conagra Foods, Inc., 458 F.3d 98, 101 (2d Cir. 2006)(per curiam)("[A] litigant who is a prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs.")(multiple citations omitted).

'prevailed.'" <u>White v. New Hampshire Dept. of Employment Sec.</u>, 455 U.S. 445, 451-52 (1982).  The award of attorney's fees "is uniquely separable from the cause of action to be proved at trial." <u>Id.</u> at 452 (citation omitted); <u>see Barbour v. City of White Plains</u>, 700 F.3d 631, 633-34 (2d Cir. 2012)(attorney's fees are included within the definition of costs in 42 U.S.C. § 1988 and as such, fees were not included in a Rule 68 offer that did not include costs).  In addition to awarding attorney's fees and costs under Section 1988, "the court, in its discretion, may include expert fees as part of the attorney's fee."  42 U.S.C. § 1988(c).  Thus, once a plaintiff establishes that she is the prevailing party under 42 U.S.C. § 1988(b), the court engages in a "case-specific approach for determining a reasonable fee to award." <u>Crawford v. City of New London</u>, No. 3:11 CV 1371(JBA), 2015 WL 1125491, at *1 (D. Conn. Mar. 12, 2015)(multiple citations omitted).

b. PRE AND POST-JUDGMENT INTEREST

While "prejudgment interest awarded pursuant to [the Connecticut prejudgment interest statute, CONN. GEN. STAT. § 37-3a(a),] is in the nature of compensatory damages[,]" and the issue of "whether . . . defendant wrongfully detained money damages due to . . . plaintiff" is a "factual issue [for] the finder of fact[,]" <u>Ferguson v. Fairfield Caterers, Inc.</u>, No. 3:11 CV 1558(JAM), 2015 WL 2406156, at *11 (D. Conn. May 20, 2015)(multiple citations & internal quotations omitted),[10] an award of pre-judgment interest in a "suit to enforce a federal right, . . . is ordinarily left to the discretion of the district court."  <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 873 (2d Cir. 1998)(multiple citations omitted);[11] <u>see Carpenters Dist.</u>

---

[10]In <u>Ferguson</u>, the state prejudgment interest statute governed an award for a state law claim under the Connecticut Fair Employment Practices Act.  2015 WL 2406156, at *11.

[11]Similarly, "[a]n award of prejudgment interest under section 37-3a is an equitable determination within the discretion of the court." <u>Cadle Co. v. Fletcher</u>, No. 3:11 CV 794(SRU), 2014 WL 3962469, at *3 (D. Conn. Aug. 13, 2014)(internal quotations & citations omitted).

9

Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc., 15 F.3d 1275, 1288 (5th Cir. 1994)("federal law governs the range of remedies, including the allowance and rate of prejudgment interest, where a cause of action . . . arises out of federal statute.")(citations omitted), cert. denied, 513 U.S. 1126 (1995).  Moreover, "[t]o the extent . . . that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion not to include prejudgment interest."  Gierlinger, 160 F.3d at 873 (citations & internal quotations omitted)(emphasis in original).

Post-judgment interest is governed by 28 U.S.C. § 1961(a).  Such interest is "mandatory[,]" Fraser v. Wyeth, Inc., 992 F. Supp. 2d 68, 102 (D. Conn. 2014), and is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).

Accordingly, in light of the foregoing, plaintiff did not violate Rule 26(a)(1)(A)(iii) in failing to provide a computation for her demand for punitive damages, attorney's fees and costs, and pre and post-judgment interest.

B. CORRECTED RULE 11 MOTION FOR SANCTIONS (Dkt. #193)

In this motion, defendant moves for an order sanctioning plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure for failing to properly amend her complaint pursuant to the February 2015 Ruling. (Dkt. #193, at 1).  Specifically, defendant moves for "an order pursuant to Rule 11 . . . dismissing this action." (Id. at 4).  Plaintiff responds that the allegations contested by defendant constitute evidence of "similar acts of misconduct [which are] admissible as [they] pertain[] to the consideration of whether to award punitive

damages, an issue at the center of [p]laintiff's claim against [d]efendant Miron, individually."

(Dkt. #200, at 4).

1. RULE 11 STANDARD

In addition to the court's authority to impose sanctions under Rule 37, as discussed above,  Rule 11(c)(1) provides that a court, by a party's motion or on its own, "may impose an appropriate sanction on any attorney, law firm, or party that violate[s]" Rule 11(b). FED. R. CIV. P. 11(c)(1); see Doe v. Mastoloni, No. 3:14 CV 718(CSH), 2015 WL 2452691, at *6 (D. Conn. May 22, 2015)("Any attorney filing a motion [or pleading] under Rule 11(b), must, inter alia, certify to the best of her knowledge that the motion is not being brought for any improper purpose and is not frivolous in nature.")(citation omitted).  Rule 11 provides that sanctions may be imposed on a party who filed a motion or pleading for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  FED. R. CIV. P. 11(b)(1).   Additionally, sanctions may be imposed if "the claims, defenses, and other legal contentions are [not] warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law . . . [,]" FED. R. CIV. P. 11(b)(2); if factual contentions lack evidentiary support, FED. R. CIV. P.11(b)(3); and, if the "denials of factual contentions are [not] warranted on the evidence or, if specifically so identified, are [not] reasonably based on belief or a lack of information." FED. R. CIV. P. 11(b)(4).  "Rule 11 is aimed at curbing abuse of the judicial system, and 'provides a vehicle for sanctioning an attorney, a client or both.'" Stone v. BBS Auto. Group. Inc., No. 04 CV 985(HBF), 2006 WL 141631, at *2 (D. Conn. Jan. 18, 2006), quoting United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1343 (2d Cir. 1991).  However,

> [s]anctions are only warranted where it is patently clear that a claim has no chance of success under existing precedents, or when a plaintiff persists with

11

a claim after it has become patently clear it has no basis in fact or law. The
court must resolve any and all doubts in favor of the signing party. . . .

. . . The Rule only requires reasonableness under the circumstances.
As such, the relevant inquiry becomes whether a specific filing was, if not
successful, at least well founded.

Id., 2006 WL 141631, at *2 (multiple citations, alterations & internal quotations omitted).

In this case, defendant does not cite any legal precedent for the dismissal sanction he seeks,

nor does he cite the provision of Rule 11 that he contends plaintiff has violated. For the

reasons explained below, defendant's Corrected Motion for Rule 11 Sanctions is denied.

### 2. SECOND AMENDED COMPLAINT

In the July 2014 Ruling, plaintiff was precluded, inter alia, from presenting evidence

of a hiring pattern and practice, 2014 WL 3700982, at *6,[12] and in the February 2015 Ruling,

plaintiff was ordered to "file an Amended Complaint reflecting the remaining claims in this

case." 2015 WL 630957, at *7. Nevertheless, in her Second Amended Complaint, plaintiff

includes the allegations contained in paragraphs 23-29 that relate to the claimed pattern or

practice of promoting from within (Sec. Am. Compl., ¶ ¶ 23-29), she restates that defendant

"decided not to fill positions from within as had been Stratford's past practice" (id. ¶ 21);

and plaintiff adds a new allegation stating "Miron has hired or promoted less qualified non-

union officers over union members without regard for the prior practice of promoting from

within based on the Chief's recommendation." (Id. ¶ 52). Plaintiff contends that while "the

_____

[12]Additionally, plaintiff was precluded from "arguing, presenting and/or introducing
evidence regarding any claim of constructive discharge[,]" as such claim was not included in this
case, 2014 WL 3700982, at *7-8, and, as stated in that Ruling, the absence of plaintiff's claim for
constructive discharge precludes plaintiff from "arguing, presenting and/or introducing evidence
regarding front pay[,]" because her claim for front pay was premised solely on her claim that she
was constructively discharged. Id. at *8. Plaintiff was also precluded from claiming damages for
emotional distress as "[a]t no time [in the course of this case has plaintiff] assert[ed] a claim for
emotional distress[.]" Id.

Court precluded evidence of a hiring pattern or practice for purposes of establishing [d]efendant's liability for § 1983 First Amendment retaliation, . . . the Court did not issue a blanket ban on the use of this evidence for a separate purpose, such as establishing that Miron's conduct was in reckless or callous indifference to the federally protected rights of [plaintiff], thus entitling her to punitive damages[.]" (Dkt. #200, at 4).  According to plaintiff, this "me too" evidence is relevant to proving punitive damages (id. at 8-10), and the relevant allegations in the Second Amended Complaint "pertain to the Town[']s prior practice of promoting qualified candidates within the Stratford Fire Department, a practice that was disturbed during [d]efendant Miron's tenure as Mayor."  (Id. at 10).

> In the July 2014 Ruling, this Court observed that
>
> > this is not a Title VII disparate impact case where plaintiff is attempting to prove her case by using the employer's pattern and practice of mistreating a protected group. . . .  Rather, plaintiff is trying to establish the opposite; that she did not benefit from a pattern or practice of promoting from within, and
>
> she was denied that benefit as retaliation for her union activity.  Notwithstanding this argument, while plaintiff points to the career paths of several of her colleagues to argue that the failure to promote her to Deputy Chief in 2009 has denied her a promotion to Fire Chief in 2011 when the then-current Fire Chief retired, this contention is entirely speculative. Although plaintiff directs the Court's attention to others who were promoted from within, defendant appropriately notes that such a pattern could not apply to all who held the position of Assistant Chief, as plaintiff did.  There are several Assistant Chiefs, and only one Deputy Chief.  Accordingly, evidence of a hiring pattern and practice is not relevant.

2014 WL 3700982, at *6 (emphasis added), citing FED. R. CIV. P. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

The foregoing notwithstanding, plaintiff now contends that evidence of similar acts of promoting from within is admissible for consideration in assessing punitive damages as the failure to provide plaintiff with the same benefit is evidence of defendant Miron's anti-union animus. (Dkt. #200, at 8-10). Specifically, as stated above, plaintiff seeks to establish

that it has been the prior "policy and practice" of the Stratford Fire Department to fill positions from within, but defendant Miron's conduct of breaking from this prior "policy and practice" was "'motivated by evil motive or intent' or . . . it involved 'reckless or callous indifference to the federally protected rights of others.'" (Id. at 8)(citations omitted).  Rather than referring to plaintiff's evidence as evidence of a "pattern or practice[,]" plaintiff asserts that the allegations in question constitute "me too" evidence which is relevant to punitive damages. (Id. at 8-10).

"Me too" evidence may be admissible under, among other evidentiary rules, Federal Rule of Evidence 404(b)(2) in certain discrimination and retaliation cases.  Plaintiff contends that the "me too" evidence is admissible under Federal Rule of Evidence 401 which defines "relevant evidence" as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." (Dkt. #200, at 8).  However, plaintiff implicitly is arguing that this evidence is admissible to prove defendant's intent to discriminate and retaliate; such evidence is governed by Federal Rule of Evidence 404(b)(2) which governs evidence that is "admissible for another purpose, such as proving motive, . . . intent . . .[or] plan . . . ."  This Rule is "equally applicable to discrimination cases[]" to establish the "proof of motive" for an employment decision.  Alaniz v. Zamaora-Quezada, 591 F.3d 761, 774 & n.34 (5th Cir. 2009), citing Hitt v. Connell, 301 F.3d 240, 249-50 (5th Cir. 2002).

In Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1285-87 (11th Cir.), reh'g en banc denied, 278 F. App'x 1001 (11th Cir. 2008), the Eleventh Circuit held that in situations involving the same relevant decision-maker, "me too" evidence may be admissible as evidence of a discriminatory animus.  Two years ago, in this Court's decision in Doe v.

Univ. of Conn., No. 3:09 CV 1071(JGM), 2013 WL 4504299, at *12 (D. Conn. Aug. 22, 2013),[13] this Court discussed the Eleventh Circuit's "extensive[ analysis] in Goldsmith[,]" finding:

> The Eleventh Circuit explicitly held that [the] "me too" [testimony of plaintiff's coworkers with respect to discrimination against them by defendant] was . . . admissible to support plaintiff's claim of a hostile work environment . . . under FED. R. EVID. 404(b), to prove the intent of defendant to discriminate and retaliate, especially when plaintiff and two coworkers were discriminated against by the same supervisor and the same Vice President was involved in the termination decisions for plaintiff and three other employees. The Eleventh Circuit continued: "[plaintiff's] 'me too' evidence was also admissible, under Rule 402, as relevant to his claim of a hostile work environment."

Id. at *12, quoting Goldsmith, 513 F.3d at 1285-86 (multiple alterations omitted).

In Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 383 (2008)["Mendelsohn"], the U.S. Supreme Court defined "me too" evidence as "testimony by nonparties alleging discrimination at the hands of persons who played no role in the adverse employment decision challenged by the plaintiff."  See also Houston v. Easton Area Sch. Dist., No. 03-3494, 2010 WL 4236924, at *8, n.6 (E.D. Pa. Oct. 25, 2010), aff'd on other grounds, 444 F. App'x 523 (3d Cir. 2011), cert. denied, 132 S. Ct. 1807 (2012).  In Mendelsohn, the Supreme Court considered the admissibility of "me too" evidence in an employment discrimination case, holding that the evidence was neither per se admissible nor per se inadmissible, 552 U.S. at 386-88, but rather, "[t]he question whether evidence of discrimination [against other employees] by other supervisors is relevant in an individual [discrimination] case is fact based and depends on many factors, including how closely related the evidence is to the

---

[13]In Doe, this Court deferred deciding whether plaintiff's coworkers could testify about discrimination against them by the defendant in that case, because the Court "lack[ed] information regarding what testimony plaintiff intend[ed] to proffer from [the] . . . witnesses" and whether "the experiences of the other coworkers [were] substantially similar to that of plaintiff – that is quid pro quo sexual harassment or hostile work environment by [the defendant] during the relevant period of time."  2013 WL 4504299, at *13.

plaintiff's circumstances and theory of the case." Id. at 388.  The Sixth Circuit has explained that

> a number of factors are relevant to this determination: (1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same "bad actors" were involved in the "other" conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations.

Schrack v. RNL Carriers, Inc., 565 F. App'x 441, 445 (6th Cir. 2014), citing Griffin v. Finkbeiner, 689 F.3d 584, 599 (6th Cir. 2012).

In this case, plaintiff is not alleging that nonparties suffered discrimination at the hands of another supervisor, or even at the hands of the same supervisor, but instead, plaintiff is alleging that plaintiff, under defendant Miron's tenure, did not receive the benefit of a past pattern or practice of the previous administrations, and that defendant Miron's failure to follow that past practice evidences his anti-union animus.  However, the claims in plaintiff's Second Amended Complaint concern a practice of promoting the Deputy Chief to the position of Fire Chief.  (See Second Am. Compl. ¶¶ 24-25, 27; but see id. ¶ 27 (regarding Deputy Chief positions only)).  Specifically, plaintiff alleges in her Second Amended Complaint that since 1990, with the exception of hiring Ron Nattrass from another department in 1994, first as Deputy Chief,[14] and then as Fire Chief, Stratford has promoted every deputy fire chief to the position of fire chief from within, based on the Fire Chief's recommendation.  (Id. ¶¶ 24-25).  However, plaintiff was not denied the benefit of being promoted to Fire Chief from the position of Deputy Chief, as she claims was the pattern and practice of the Department.

---

[14]Similarly, in this case, the Deputy Chief who was hired over plaintiff was hired from outside the Stratford Fire Department.

16

Instead, she was not hired as a Deputy Chief, from the position of Assistant Chief.[15]  As explained in this Court's July 2014 Ruling, there are four Assistant Chiefs, not all of whom can be promoted to the position of Deputy Chief.

Moreover, as discussed above, "me too" evidence is evidence by nonparties alleging similar discrimination by either the same supervisor or  another supervisor, and that is simply not the "me too" claims plaintiff asserts in the Second Amended Complaint.  The allegations in the Second Amended Complaint, including an entirely new allegation in paragraph 52 of the Second Amended Complaint, are allegations of a "pattern and practice[,]" which this

---

[15]Additionally, while plaintiff references four individuals who were promoted from Deputy Chief to Fire Chief, one was not promoted from within, and another was promoted from within in 2007, while defendant Miron was Mayor, all prior to 2008 when the Assistant Chiefs, including plaintiff, rejoined the bargaining unit. (Second Am. Compl. ¶ 27; February 2014 Ruling, 996 F. Supp. 2d at 97-98). Thus, the situations in half of the examples to which plaintiff points do not support plaintiff's contention that there was a past practice of internal promotions prior to Mayor Miron's tenure, and that she was then denied the benefit of that internal promotions practice. Specifically, plaintiff alleges that in 1990, Roger Macy was promoted from Assistant Chief to Deputy Chief and then went on to become Fire Chief.  (Second Am. Compl. ¶ 27).  Macy was succeeded by a Deputy Chief hired from outside the Department, just as the situation in this case, and Macy was followed by John Cybart, who had been hired as an Assistant Chief from outside the Department (id. ¶ 25), and then went on to the position of Deputy Chief. (Id. ¶ 27).  In 2007, when defendant Miron was Mayor and before the Assistant Chiefs rejoined the firefighter's union, Cybart was succeeded as Deputy Chief by Michael Hostetter, as Assistant Chief at the time of his promotion. (Id.; see Dkt. #88, Exh. F, ¶ 7).  The fact that Hostetter was promoted while defendant was Mayor contradicts plaintiff's current argument that this "me too" evidence "pertain[s] to the Town['])s prior practice of promoting qualified candidates with the Stratford Fire Department, a practice that was disturbed during [d]efendant Miron's tenure as Mayor."  (Dkt. #200, at 8-10).

Moreover, even if these allegations established similar incidences of discrimination, plaintiff's allegations are not "closely related" to "plaintiff's circumstances and theory of [her] case[,]" see Mendelsohn, 552 U.S. at 388, as the position that she sought and was denied allegedly because of an anti-union animus, that is the promotion from Assistant Chief to the position of Deputy Chief, is not comparable to the positions for which the alleged pattern of practice has applied, that is, promotions from the position of Deputy Chief to Fire Chief.  See Jackson v. United Parcel Serv., Inc., 593 F. App'x 871, 874, 877 (11th Cir. 2014)("me too" evidence of other complaints of discrimination rejected when not relevant to the later denial of a promotion by a different decision-maker). Plaintiff's situation is a position removed from those she points to support her claim of "me too" evidence, or evidence of this pattern and practice of promoting from within. That said, however, defendant has not moved to exclude this evidence for the purpose of establishing discriminatory intent, and, as explained below, this Court will not rule on the admissibility of this evidence by way of a Motion for Rule 11 Sanctions.

Court has already held in the July 2014 Ruling are not relevant under FED. R. EVID. 401, as

plaintiff's Title VII claims are no longer in this case.   2014 WL 3700982, at *6.

However, as previously discussed, in her recent brief in opposition, plaintiff implicitly

is invoking Rule 404(b), not Rule 401, of the Federal Rules of Evidence, and "me too"

evidence may be used to establish defendant Miron's intent under FED. R. EVID. 404(b). "The

[U.S.] Supreme Court has held that wide evidentiary latitude must be granted to those

attempting to prove discriminatory intent and that 'the trier of fact should consider all of the

evidence.' Those discriminated against will often not be able to rebut a plausible cover-up

with direct evidence[.]" Demers v. Adams Homes of Northwest Fl., Inc., 321 F. App'x 847,

853 (11th Cir.), quoting U.S. Postal Serv. v. Aikens, 460 U.S. 711, 714 & n.3 (1983), reh'g

en banc denied, 347 F. App'x 557 (11th Cir. 2009).  Accordingly, "discriminatory intent may

be proven by direct or circumstantial evidence, such as that admitted under 404(b)." Id.

(citation omitted).  That said, however, "district courts must engage in a 'fact-intensive,

context-specific inquiry' to determine whether to exclude such evidence under Rule 403."[16]

Houston, 2010 WL 4236924, at *8, quoting Mendelsohn, 552 U.S. at 388.   In the earlier

motions in limine (see Dkts. ##128-31), defendant did not move to preclude this evidence

for the purpose of establishing defendant Miron's intent, but now seeks to do so through a

vague[17] Motion for Rule 11 Sanctions.   This Court declines to address an important

evidentiary challenge at this procedural juncture, as "[t]he Court must make [this] 'fact-

---

[16]Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.

[17]As mentioned above, defendant does not cite any legal precedent for the dismissal sanction he seeks, nor does he cite the provision of Rule 11 that he contends plaintiff has violated.

intensive, context-specific inquiry' in applying Federal Rule of Evidence 403 to determine if such evidence is relevant or prejudicial, and such determination must be made at trial." Bingham v. Raytheon Techs. Servs. Co., LLC, No. 1:13 CV 00211(TWP)(DKL), 2014 WL 6632380, at *2 (S.D. Ind. Nov. 21, 2014), quoting Mendelsohn, 552 U.S. at 388.  Moreover, this Court notes that "[e]ven when 'me too' evidence is relevant under Rule 401, the district court retains discretion to exclude that evidence, under Rule 403, if it is unduly prejudicial, confusing, misleading, or cumulative."  Adams v. Austal, U.S.A., LLC, 754 F.3d 1240, 1258 (11th Cir. 2014); see Schrand v. Fed. Pac. Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988)(the 'me too' evidence of discrimination against other employees was irrelevant because the decision maker was not involved in the decisions affecting the plaintiffs).

As previously discussed, in this motion defendant seeks the severe penalty of dismissal of plaintiff's lawsuit for her alleged Rule 11 violation.  (Dkt. #193, at 4).  "The decision whether to impose a sanction for a Rule 11(b) violation is [ ] committed to the district court's discretion." Kovaco v. Rockbestos-Surprenant Cable Corp., No. 3:11 CV 377(WWE), 2014 WL 1572751, at *5 (D. Conn. Apr. 17, 2014), quoting Perez v. Posse Comitatus, 373 F.3d 321, 326 (2d Cir. 2004); see also FED. R. CIV. P. 11(c).  Moreover, "[t]he Advisory Committee Notes to Rule 11 expressly state that 'the court should not ordinarily have to explain its denial of a motion for sanctions.'" Perez, 373 F.3d at 327, quoting FED. R. CIV. P. 11 Advisory Committee Note (1993).  For the reasons discussed above, plaintiff's amended pleading is "at least well founded[,]" and thus, sanctions are not warranted. Stone, 2006 WL 141681, at *2 (citations omitted).   Accordingly, defendant's Corrected Motion for Sanctions is denied.  As this case approaches trial, however, the Court will require additional

19

briefing on this critical evidentiary issue.[18]

<u>II. CONCLUSION</u>

For the reasons stated above, defendant's Motion for Sanctions (Dkt. #183) is <u>denied</u>,

and defendant's Corrected Rule 11 Motion for Sanctions (Dkt. #193) is <u>denied</u>.[19]

Dated this 1st day of July, 2015, at New Haven, Connecticut.


　　　　　　　　　　　　　　　　　　/s/ Joan G. Margolis, USMJ
　　　　　　　　　　　　　　　　　　Joan Glazer Margolis
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[18]<u>See</u> note 19 <u>infra</u>.

[19]Counsel shall contact this Magistrate Judge's Chambers to schedule a final pre-trial conference.  Due to various scheduling issues, this jury trial will not be held until early 2016.