IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                           :
ELLEN MURRAY                               :        3:11 CV 629 (JGM)
                                           :
v.                                         :
                                           :
JAMES MIRON, Individually, and in his      :
official capacity as Mayor of the Town of  :        DATE: OCTOBER 5, 2015
Stratford                                  :
-------------------------------------------------------x
```

RULING ON DEFENDANT'S MOTIONS IN LIMINE (Dkts. ##205-06)

Familiarity with this litigation is presumed, but for the sake of clarity, just as this

Court has done in its previous rulings, a brief recitation of the rulings relevant to the pending

motions follows.  On February 11, 2014, this Magistrate Judge filed a lengthy Ruling on the

Parties' Cross Motions for Summary Judgment and on Plaintiff's Motions to Strike (Dkt.

#102)["February 2014 Ruling"], in which defendant Town of Stratford's Motion for Summary

Judgment was granted in part and denied in part, defendant Miron's Motion for Summary

Judgment was granted in part and denied in part, and plaintiff's Motion for Partial Summary

Judgment was denied.  Murray v. Town of Stratford, 996 F. Supp. 2d 90 (D. Conn. 2014).

Jury selection and a jury trial were scheduled for August 11, 2014 (see Dkt. #114), and on

July 25, 2014, this Magistrate Judge filed a lengthy Ruling on Multiple Motions in Limine (Dkt.

#153)["July 2014 Ruling"], 2014 WL 3700982 (D. Conn. July 25, 2014).

On August 8, 2014, four days after this case was administratively closed,[1] plaintiff

_____

[1]A final pre-trial conference was held on July 29, 2014, at which time counsel advised the
Court that they were just recently made aware that defendant Miron had a bankruptcy matter
pending in the United States Bankruptcy Court in Bridgeport.  See In re James R. Miron, No. 13-
50950.  (See Dkts. ##158-59).  Six days later, this Magistrate Judge issued an Order
Administratively Closing File Pending Further Action in Bankruptcy Court (Dkt. #160), until
notification from counsel that the U.S. Bankruptcy Court had lifted the automatic stay or had
otherwise granted permission for this litigation to continue.  The case was closed the same day.

filed her first Motion for Reconsideration of the July 2014 Ruling.  (Dkt. #161; see Dkts. ##162-63, 170).[2]  Following the reopening of the case (see Dkt. #166), plaintiff re-filed her second Motion for Reconsideration of the July 2014 Ruling (Dkt. #169; see also Dkts. ##170, 175-76), and on December 19, 2014, plaintiff filed her Motion for Leave to Amend Complaint.  (Dkt. #177; see Dkts. ##178-79).  On February 12, 2015, this Magistrate Judge filed her Ruling on Plaintiff's Motion for Reconsideration and on Plaintiff's Motion for Leave to Amend Complaint (Dkt. #180)["February 2015 Ruling"], 2015 WL 630957 (D. Conn. Feb. 12, 2015), denying both motions.  On February 23, 2015, plaintiff filed her Second Amended Complaint ["Sec. Am. Compl."].  (Dkt. #182).

On March 9, 2015, defendant filed a Motion for Sanctions (Dkt. #183; see Dkts. ##184, 186-89), followed on April 28, 2015 by a Corrected Rule 11 Motion for Sanctions (Dkt. #193; see Dkts. ##192, 196-98).  On July 1, 2015, this Magistrate Judge filed a Ruling On Defendant's Motion for Sanctions and Defendant's Corrected Rule 11 Motion for Sanctions (Dkt. #202)["July 2015 Ruling"], 2015 WL 4041340 (D. Conn. July 1, 2015), denying both motions.

On July 24, 2015, defendant filed the pending Motion in Limine (Dkt. #205) to "preclud[e] argument, reference to, or evidence offered to prove 'me too' discriminatory animus, intent, plan or motive under Rule 404(b)(2) of the Federal Rules of Evidence."  (At 1).  On August 14, 2015, plaintiff filed her brief in opposition (Dkt. #208),[3] and on August 25, 2015, defendant filed his reply brief.  (Dkt. #212).  On September 17, 2015, plaintiff filed

---

[2]On November 13, 2014, following a telephone conference call with this Court (see Dkts. ##164-65), plaintiff filed a Notice of the United States Bankruptcy Court Order reopening this case and granting relief from the automatic stay.  (Dkt. #165).

[3]Copies of case law are attached.

a sur-reply brief.  (Dkt. #218[4]; see Dkts. ##214-15, 217).

Also on July 24, 2015, defendant filed a Motion in Limine (Dkt. #206)[5] to "preclud[e] argument, reference to, and evidence offered by the plaintiff to prove that she suffered any compensatory damages."  (At 1).  On August 17, 2015, plaintiff filed her brief in opposition. (Dkt. #211; see Dkts. ##209-10).[6]  Two weeks later, defendant filed his reply brief.  (Dkt. #213).[7]

For the reasons stated below, defendant's Motion in Limine (Dkt. #205) is granted, and defendant's Motion in Limine (Dkt. #206) is granted in part and denied in part.

## I. PENDING MOTIONS

### A. MOTION IN LIMINE RE: "ME TOO" EVIDENCE (Dkt. #205)

Defendant moves to preclude argument, reference to, or evidence offered to prove "me too" discriminatory animus, intent, plan, or motive under Rule 404(b)(2) of the Federal Rules of Evidence.  (Dkt. #205, at 1).  As defendant appropriately observes, "[p]attern and practice evidence has already been excluded, as has any evidence offered to prove that but

---

[4]Copies of case law are attached.

[5]Attached to defendant's motion is a copy of Plaintiff's Amended Damages Analysis, dated February 23, 2015 (Exh. 1), with four subexhibits (Exhs. A-D); copy of Curtis Maffett's pay record (Exh. 2); copy of plaintiff's annual compensation (Exh. 3); and copy of Employer's Tax Guide to Fringe Benefits, 2015 (Exh. 4).

[6]Attached to plaintiff's brief in opposition are copies of case law; copy of pay record for plaintiff (Exh. A); copy of "Town of Stratford Personnel Action Entry Proof" for plaintiff (Exh. B); copy of Section IX. Contributions (Exh. C); copy of excerpts from the Town of Stratford's Comprehensive Annual Financial Report, for Fiscal Year Ended June 30, 2009 (Exh. D); and copy of excerpts from the Town of Stratford's Comprehensive Annual Financial Report, for Fiscal Year Ended June 30, 2010 (Exh. E).

[7]Attached to defendant's reply brief is a copy of Plaintiff's Damage Analysis, dated September 29, 2011, with attachment (Exh. 1); copy of plaintiff's 2009 joint tax return, 2009 W-2 and 2009 pay statement (Exh. 2); copy of plaintiff's 2010 joint tax return and 2010 W-2 (Exh. 3); and copy of Tentative Agreement, signed September 30, 2010 (Exh. 4).

for defendant's retaliatory conduct[,] [plaintiff] would have been promoted eventually to Fire Chief." (Dkt. #205, at 3). Additionally, plaintiff's added allegations in her Second Amended Complaint "constitute pattern and practice allegations, evidence of which has already been ordered precluded[]" (id. at 4), includes allegations that were "never previously part of . . . plaintiff's claims" (Dkt. #212, at 1), and both the deadline for amending pleadings, and the deadline for conducting discovery, have passed. (Dkt. #205, at 4-5).

In the July 2014 Ruling, plaintiff was precluded, inter alia, from presenting evidence of a hiring pattern and practice, 2014 WL 3700982, at *6, and yet, in her proposed Second Amended Complaint, plaintiff has continued to include allegations in paragraphs 16 and 18-24 that plaintiff "was entitled to be promoted from within as such was the pattern and practice of Stratford Fire Department." (See Dkt. #177-1, ¶¶ 16, 18-24). In the February 2015 Ruling, this Court again repeated that the foregoing allegations constitute pattern and practice evidence which this Court already held in the July 2014 Ruling "'is not relevant to the claims remaining in this case.'" February 2015 Ruling, 2015 WL 630957, at *5, n. 7, quoting July 2014 Ruling, 2014 WL 3700982, at *6. Plaintiff was ordered to "file an Amended Complaint reflecting the remaining claims in this case." February 2015 Ruling, 2015 WL 630957, at *7.

Eleven days after this Court's February 2015 Ruling, plaintiff filed her Second Amended Complaint in which paragraphs 16, 18-24, re-numbered as paragraphs 21, 23-29, appear verbatim. Specifically, plaintiff again repeated her claims relating to a pattern or practice of promoting from within (Sec. Am. Compl., ¶¶ 23-29), restated that defendant "decided not to fill positions from within as had been Stratford's past practice[]" (id. ¶ 21), and added a new allegation that defendant "Miron has hired or promoted less qualified non-

4

union officers over union members without regard for the prior practice of promoting from within based on the Chief's recommendation. . . ."  (Id. ¶ 52); see July 2015 Ruling, 2015 WL 4041340, at *5-6.

On April 28, 2015, defendant moved for sanctions against plaintiff for including paragraphs 21, 23-29, and 52 in her Second Amended Complaint in direct contravention to this Court's previous rulings.  In response (see Dkts. ##193, 200), plaintiff focused her argument on differentiating "pattern and practice evidence" from "me too" evidence, arguing that while "the Court precluded evidence of a hiring pattern or practice for purposes of establishing [d]efendant's liability for § 1983 First Amendment retaliation, . . . the Court did not issue a blanket ban on the use of this evidence for a separate purpose, such as establishing that Miron's conduct was in reckless or callous indifference to the federally protected rights of [plaintiff], thus entitling her to punitive damages[.]" (Dkt. #200, at 4). Plaintiff also asserted that this "me too" evidence is relevant to proving punitive damages (id. at 8-10), and the relevant allegations in the Second Amended Complaint "pertain to the Town[']s prior practice of promoting qualified candidates within the Stratford Fire Department, a practice that was disturbed during [d]efendant Miron's tenure as Mayor." (Id. at 10).  In this Court's July 2015 Ruling, this Court reiterated that the allegations asserted in plaintiff's Second Amended Complaint are "simply not . . . 'me too' claims" as the "allegations in the Second Amended Complaint, including an entirely new allegation in paragraph 52 of the Second Amended Complaint, are allegations of a 'pattern and practice[,]' which this Court has already held in the July 2014 Ruling are not relevant under FED. R. EVID. 401[.]" 2015 WL 4041340, at *9, quoting July 2014 Ruling, 2014 WL 3700982, at *6. After acknowledging that plaintiff "implicitly is invoking Rule 404(b) . . . of the Federal Rules of

Evidence," and noting that "'me too' evidence may be used to establish defendant Miron's intent under FED. R. EVID. 404(b)[,]" the Court "declin[ed] to address [this] important evidentiary challenge at [that] procedural juncture[.]" July 2015 Ruling, 2015 WL 4041340, at *9.

The foregoing history notwithstanding, plaintiff asserts, again, that she "should not be prohibited from offering evidence relating to the environment that allowed the promotional process to be abused." (Dkt. #208, at 6). Plaintiff argues "[t]o that end, at trial, [p]laintiff intends to present evidence demonstrating a policy and practice regarding promotions within the Stratford Fire Department[.]" (Id.). Incredibly, in spite of the procedural history of this case and this Court's prior rulings, plaintiff contends that she should be permitted to present evidence of the Town's deviation from prior promotional policy and practice (Dkt. #208, at 4-6); the Town of Stratford had a policy and practice of filling the position of Deputy Chief with qualified, internal candidates, when available (id. at 6-8); defendant "has failed to meet his burden and should be denied an order precluding 'me too' evidence at trial[]" (id. at 8-13); and the Court "should not issue an order precluding evidence in support of the allegations in paragraph 52 of plaintiff's Second Amended Complaint[]" (id. at 13-15), in which plaintiff asserts that defendant "Miron has hired or promoted less qualified non-union officers over union members without regard for the prior practice of promoting from within based on the Chief's recommendation." (Sec. Am. Compl. ¶ 52). She also contends that the "testimony of [her] proposed 'me too' witnesses is not being offered in support of a new cause of action or legal theory . . . ; rather, this evidence is admissible under [FED. R. EVID.] 404(b)(2) as probative of [d]efendant Miron's impermissible motive and intent[.]" (Dkt. #218, at 2)(emphasis omitted).

6

As discussed in the July 2015 Ruling, familiarity with which is presumed, "'me too' evidence is evidence by nonparties alleging similar discrimination by either the same supervisor or another supervisor, and that is simply not the 'me too' claims plaintiff asserts in the Second Amended Complaint." 2015 WL 4041340, at *9. Moreover, as this Court also found in the July 2015 Ruling, "[t]he allegations in the Second Amended Complaint, including an entirely new allegation in paragraph 52 . . . , are allegations of a 'pattern and practice[,]' which this Court has already held in the July 2014 Ruling are not relevant under FED. R. EVID. 401, as plaintiff's Title VII claims are no longer in this case." Id., citing 2014 WL 3700982, at *6.

In the July 2015 Ruling, this Court found that "me too" evidence may be admissible as evidence of a discriminatory animus, see 2015 WL 4041340, at *7, citing Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1285-87 (11th Cir.), reh'g en banc denied, 278 F. App'x 1001 (11th Cir. 2008), and that the U.S. Supreme Court, in Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 383 (2008)["Mendelsohn"], has "defined 'me too' evidence as 'testimony by nonparties alleging discrimination at the hands of persons who played no role in the adverse employment decision challenged by the plaintiff.'" 2015 WL 4041340, at *8, citing Houston v. Easton Area Sch. Dist., No. 03-3494, 2010 WL 4236924, at *8, n.6 (E.D. Pa. Oct. 25, 2010), aff'd on other grounds, 444 F. App'x 523 (3d Cir. 2011), cert. denied, 132 S. Ct. 1807 (2012). In Mendelsohn, the U.S. Supreme Court considered the admissibility of "me too" evidence in an employment discrimination case, holding that the evidence was neither per se admissible nor per se inadmissible, 552 U.S. at 386-88, but rather, "[t]he question whether evidence of discrimination [against other employees] by other supervisors is relevant in an individual [discrimination] case is in fact based and depends on many

7

factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Id. at 388.   As discussed in the July 2015 Ruling, there are a number of factors relevant to this determination:

> (1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same "bad actors" were involved in the "other" conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations.

2015 WL 4041340, at *8, quoting Schrack v. RNL Carriers, Inc., 565 F. App'x 441, 445 (6th Cir. 2014), citing Griffin v. Finkbeiner, 689 F.3d 584, 599 (6th Cir. 2012). While acknowledging that "wide evidentiary latitude must be granted to those attempting to prove discriminatory intent and that the trier of fact should consider all of the evidence[,] [as] [t]hose discriminated against will often not be able to rebut a plausible cover-up with direct evidence[,]" July 2015 Ruling, 2015 WL 4041340, at *9, quoting Demers v. Adams Homes of Northwest Fl., Inc., 321 F. App'x 847, 853 (11th Cir.)(additional citation and internal quotations omitted), reh. en banc denied, 347 F. App'x 557 (11th Cir. 2009), this Court "must engage in a 'fact-intensive, context-specific inquiry' to determine whether to exclude such evidence under Rule 403."[8] See July 2015 Ruling, 2015 WL 4041340, at *9, quoting Mendelsohn, 552 U.S. at 388, citing Houston, 2010 WL 4236924, at *8.

---

[8]Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## 1. FACTORS RELEVANT TO THE DETERMINATION OF THE ADMISSIBILITY OF "ME TOO" EVIDENCE

In this case, the incidences plaintiff identifies are far removed from the time frame at issue in this case, and the alleged pattern and practice did not involve individuals who were similarly situated to plaintiff in that none of plaintiff's alleged comparators were unionized employees, and these claims do not relate to similarly situated employees who were in fact retaliated based on union activities. See Schrack, 565 F. App'x at 445.  As this Court discussed in the July 2015 Ruling, plaintiff's allegations in her Second Amended Complaint do not allege that nonparties suffered discrimination at the hands of another supervisor,[9] or even at the hands of the same supervisor, or that she was retaliated against for her union activities, but instead, plaintiff is alleging that, under defendant Miron's tenure, plaintiff did not receive the benefit of a past pattern or practice of the previous administrations, and that defendant Miron's failure to follow that past practice evidences his anti-union animus.  2015 WL 4041340, at *8-9.  Thus, in light of the nature of plaintiff's allegations, and mindful that "[e]ven when 'me too' evidence is relevant under Rule 401, the district court retains discretion to exclude that evidence, under Rule 403, if it is unduly prejudicial, confusing, misleading, or cumulative[,]" Adams v. Austal, U.S.A., LLC, 754 F.3d 1240, 1258 (11th Cir. 2014); see Schrand v. Fed. Pac. Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988)(the 'me too' evidence of discrimination against other employees was irrelevant because the decision maker was not involved in the decisions affecting the plaintiffs), admitting evidence about other employees in situations unlike plaintiff's will cause confusion

---

[9]For the first time in the Amended Joint Trial Memorandum, plaintiff identifies witnesses "all of whom were officers in the municipal workers' union during Mayor Miron's tenure, and all of whom were terminated from their positions due to 'cost-cutting measures.'"  (Dkt. #208, at 10, n.4).

of the issues. See FED. R. EVID. 403.

Additionally, in her current brief in opposition to defendant's Motion, plaintiff makes clear that she "intends to present evidence demonstrating a policy and practice regarding promotions within the Stratford Fire Department that, through multiple Fire Chiefs and Town leaders prior to Mayor Miron, when a qualified, internal candidate applied, the Town of Stratford consistently filled the position of Deputy Fire Chief by promoting from within the department." (Dkt. #208, at 6)(emphasis added). Plaintiff contends that she can establish the pattern and practice based on defendant's admissions in his Answer and Rule 56(a)(2) Statement (Dkt. #208, at 7-8), and she points to the promotions of Roger Macy in 1988, Ronald Natrass in 1994, John Cybart in 1996, and Michael Hostetter in 2007. (Id.). Defendant appropriately points out, however, that plaintiff "misstates" defendant's "admissions[.]" (Dkt. #212, at 3-6).[10] In the Second Amended Complaint, plaintiff alleges

---

[10]Plaintiff states: "In 1988, Roger Macy, a non-unionized Assistant Chief in the Stratford Fire Department was directly promoted to the newly-created position of Deputy Chief without any solicitation for external candidates." (Dkt. #208, at 7, citing Dkt. #84, ¶ 53)(emphasis added). However, in his Local Rule 56(a)2 Statement, defendant admitted: "In 1990, Roger Macy was promoted from Assistant Chief to Deputy Chief and later went on to become Fire Chief." (Dkt. #84, ¶ 53; see Dkt. #79-1, ¶ 53 (additional citations omitted)). Similarly, plaintiff claims that defendant admitted: "In 1994, no qualified, internal candidate from the Stratford Fire Department was interested in or applied for the position of Deputy Chief; therefore the Town accepted applications from external candidates and ultimately appointed Ronald Nattrass as Deputy Chief, an external candidate from the West Haven Fire Department." (Dkt. #208, at 7, citing Dkt. #84, ¶ 54)(emphasis added)). However, paragraph 54 actually states: "In 1994, Ron Nattrass, from West Haven, was hired as Deputy Chief at a time when there were no internal candidates interested in the Deputy Chief position." (Dkt. #84, ¶ 54; see Dkt. #79-1, ¶ 54 (additional citations omitted)). Plaintiff also states: "In 1996, John Cybart, a non-unionized Assistant Chief in the Stratford Fire Department, was directly promoted to Deputy Chief without any solicitation for external candidates." (Dkt. #208, at 7-8, citing Dkt. #84, ¶ 55)(emphasis added). However, paragraph 55 actually states: "In March 2000, Assistant Chief Cybart was promoted to Deputy Chief and later went on to become Fire Chief." (Dkt. #84, ¶ 55; see Dkt. #79-1, ¶ 55 (additional citations omitted)). Finally, plaintiff also states: "In 2007, Michael Hostetter, a non-unionized Assistant Chief in the Stratford Fire Department, was promoted to Deputy Chief without any solicitation from external candidates." (Dkt. #208, at 8, citing Dkt. 84, ¶ 56)(emphasis added). However, paragraph 56 actually states: "After Jay Cybart was promoted from Deputy Chief to Fire Chief, Michael Hostetter was promoted from Assistant Chief to Deputy Chief." (Dkt. #84, ¶ 56; see Dkt.

that in 1990, Roger Macy was promoted from Assistant Chief to Deputy Chief and then went

on to become Fire Chief.  (Sec. Am. Compl. ¶ 27).  Macy's promotion occurred more than

nineteen years prior to the situation at issue in this case, and thus is hardly in close temporal

proximity.   See Schrack, 565 F. App'x at 445.  Macy was succeeded by a Deputy Chief hired

from outside the Department, just as the situation in this case, and Macy was followed by

John Cybart, who had been hired as an Assistant Chief from outside the Department (Sec.

Am. Compl. ¶¶ 25, 27), and then went on to the position of Deputy Chief. (Id. ¶ 27).  In

2007, when defendant Miron was Mayor and before the Assistant Chiefs rejoined the

firefighter's union, Cybart was succeeded as Deputy Chief by Michael Hostetter, an Assistant

Chief at the time of his promotion.  (Id.; see Dkt. #88, Exh. F, ¶ 7).  These particular

allegations do not support plaintiff's claim that this defendant denied promotions to others

in the Stratford Fire Department in retaliation for engaging in union activity.  Goodloe v.

Daphne Utilities, No. 13-0605-WS-C, 2015 WL 2165806, at *2 n.2 (S.D. Ala. May 7,

2015)("The Court is not aware of any evidence that the same [defendant] decision maker(s)

who fired Goodloe also fired other employees in retaliation for engaging in statutorily

protected activity.  In the absence of such evidence, this case does not appear to fit the 'me

too' paradigm.").  As the court held in Goodloe, "[t]his kind of apples-to-oranges comparison

is unhelpful and improper, even in the context of a 'me too' theory." Id.

### 2. PLAINTIFF'S ADDED CLAIM IN PARAGRAPH 52

Additionally, plaintiff's allegations purport to support her newly added claim in her

Second Amended Complaint that defendant "Miron has hired or promoted less qualified non-

---

#79-1, ¶ 56 (additional citations omitted)).

union officers over union members without regard for the prior practice of promoting from within based on the Chief's recommendation." (Sec. Am. Compl. ¶ 52). As defendant aptly posits, "this allegation was never previously part of . . . plaintiff's claims. Consequently, . . . defendant never had an opportunity to conduct discovery on this new claim, test it on a motion to dismiss or move for summary judgment as to this new factual claim." (Dkt. #212, at 1-2). Thus, while in the July 2015 Ruling, this Court found that this "fact-intensive, context-specific inquiry" in applying Rule 403 to determine if such evidence is relevant and prejudicial, must be made at trial, 2015 WL 4041340, at *9, citing Bingham v. Raytheon Tech. Servs. Co., LLC, 13 CV 211(TWP)(DKL), 2014 WL 6632380, at *2 (S.D. Ind. Nov. 21, 2014)(internal quotations & additional citation omitted), such inquiry has been thoroughly conducted, and in light of plaintiff's allegations at this stage of the case, and her continued assertion of the relevance of pattern and practice evidence even in light of this Court's previous rulings (see Dkts. ##208, 212), the probative value of any evidence offered in support of plaintiff's pattern and practice claims is "substantially outweighed by a danger" of unfair prejudice to defendant.[11] FED. R. EVID. 403.

Although this Court has already addressed this issue twice before, this Court holds, once again, that plaintiff's pattern and practice evidence is not relevant to the remaining claims in this case.[12] Accordingly, plaintiff is precluded from presenting evidence of what

---

[11]Conversely, the prejudice to plaintiff in being precluded from offering pattern and practice evidence is tempered by the fact that she has been aware since this Court's July 2014 Ruling, and reminded again in this Court's February 2015 Ruling, that pattern and practice evidence is no longer part of this case.

[12]As already discussed in the July 2015 Ruling, 2015 WL 4041340, at *8, the claims in plaintiff's Second Amended Complaint concern "[t]he policy and practice of the [Stratford Fire Department,]" which plaintiff asserts "has been to fill senior ranks through promotion from within the department. For over one hundred years, only one fire chief . . . was not promoted from within the department. Since the position of Deputy Chief was created, every Deputy Fire Chief

12

plaintiff asserts is the "Town's deviation from prior promotional policy and practice[]"  which

plaintiff references in paragraphs 21, 23-29, and paragraph 52 of her Second Amended

Complaint.  (See Dkt. #208, at 4-6).

<u>B. MOTION IN LIMINE RE: COMPENSATORY DAMAGES (Dkt. #206)</u>

In the July 2014 Ruling, this Magistrate Judge ordered plaintiff to submit an Amended

Damages Analysis for her compensatory damages, itemizing the "difference in pay and

benefits between her position as an Assistant Fire Chief, and the position to which she

claimed she was denied, the position of Deputy Fire Chief." 2014 WL 3700982, at *8, n.11,

*16; see also id. at *11 ("plaintiff shall produce her damages calculation, and all underlying

documents, in compliance with Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and consistent

with this Ruling.").  This order was repeated in the February 2015 Ruling, wherein plaintiff

was ordered "[o]n or before February 23, 2015[,]" to "produce her damages calculation, and

all underlying documents, in compliance with FED. R. CIV. P. 26(a)(1)(A)(iii), and consistent

with the July 2014 Ruling[.]" 2015 WL 630957, at *7 (emphasis omitted).   Plaintiff's

production thereof then became the subject of defendant's Motion for Sanctions, filed on

March 9, 2015 (see Dkts. ##183-84, 185-90), in which defendant contended that plaintiff

did not provide computation or documentation of her claims for punitive damages, attorney's

fees, costs, and pre and post-judgment interest. (Dkt. #183, at 3).[13]  In the July 2015 Ruling,

---

has gone on to become Fire Chief except one who retired before attaining the Chief's position."
(See Sec. Am. Compl. ¶ 23).  This pattern and practice evidence is not part of plaintiff's remaining
case.

    [13]In that motion, defendant did not take issue with plaintiff's computation of lost pay,
pension contributions, and benefits as a component of her compensatory damages. In fact, in his
reply brief for his March 9th Motion for Sanctions, defendant noted that plaintiff "goes on to provide
a computation and documentation for compensatory damages[,]" but then argues that she did not
provide the same for "her claimed damages for pre and post-judgment interest, attorney['s] fees,
costs, and punitive damages."  (Dkt. #190, at 3).

this Magistrate Judge denied defendant's motion, concluding that "plaintiff did not violate Rule 26(a)(1)(A)(iii) in failing to provide a computation for her demand for punitive damages, attorney's fees and costs, and pre and post-judgment interest."  2015 WL 4041340, at *5.

In his current motion, defendant seeks preclusion of any arguments, reference to, or evidence offered by plaintiff that she suffered compensatory damages, which she broke down into three categories: (1) lost pay, evidenced by the difference between what her husband earned as an Assistant Fire Chief and what plaintiff claims the Deputy Fire Chief earned during the relevant time period; (2) lost pension contributions, evidenced by such contributions without reduction for contributions received as an Assistant Fire Chief during the relevant time period, and with compound interest; and (3) lost use of an employer-provided vehicle, based on the price of a brand-new vehicle, resulting in an inflated calculation.  (Dkt. #206, at 1-2; see id. at 2-13; see also Dkt. #213).

In response, plaintiff contends that defendant's motion should be denied as an improper summary judgment motion (Dkt. #211, at 5-7),[14] and defendant fails to meet his

---

[14]Defendant appropriately responds that the issue of plaintiff's claims for compensatory damages related to the difference in pay and benefits from what she earned as an Assistant Fire Chief and what she would have earned as a Deputy Fire Chief for the period from when Curtis Maffett was hired as Deputy Chief, and plaintiff's retirement from the Town of Stratford – August 31, 2009 to June 15, 2010 – could not have been raised in a summary judgment motion because this claim did not arise until after this Court issued its rulings in 2014. (Dkt. #213, at 1-2).  Initially, plaintiff claimed compensatory damages as the difference between the salary of the Stratford Fire Chief and the Naugatuck Deputy Fire Chief salary from 2011 to 2025.  (See Dkt. #213, Exh. 1). However, in this Court's July 2014 Ruling, this Court held that, based on plaintiff's allegations in her Amended Complaint (see Dkt. #29, ¶¶ 77, 82), "[h]er damages are limited to the difference in pay and benefits between her position as an Assistant Fire Chief, and the position to which she claimed she was denied, the position of Deputy Fire Chief."  2014 WL 3700982, at *8, n.11.  Defendant observes that he is "unable to present the undisputed material facts demonstrating the plaintiff's complete lack of cognizable compensatory damages as her current claim of damages was not originally disclosed prior to the close of discovery" or the filing of dispositive motions, and defendant "has not yet undertaken additional discovery with respect to each element of the plaintiff's compensatory damage claim and must respectfully reserve the right to do so, as well as the right to move for leave to file summary judgment on each element of that claim."  (Dkt. #213, at 3, n.2).

burden to succeed on his request to preclude plaintiff from presenting argument or evidence in support of her claim for compensatory damages (id. at 7-21).

### 1. LOST PAY

In support of her claim for lost pay, plaintiff asserts that the "$14,929.12 difference in pay is calculated by comparing the respective hourly wages of the Assistant Chief and Deputy Chief and determining the total difference in pay over the 9.5 month period at issue." (Dkt. #211, at 8).  In support of her calculations, plaintiff includes the paycheck of her husband, Thomas Murray,[15] to support her representations concerning the Assistant Chiefs' weekly wages and hours worked (see Dkt. #206, Exh. A), she claims that she did not keep her paychecks from the relevant time period, and she asserts, without evidentiary support, that the "pay scale for this position was set by the collective bargaining agreement" so that Thomas Murray and plaintiff "received the exact same weekly wage during the relevant time period in 2009-2010." (Dkt. #211, at 9). This argument is specious particularly given the evidence before the Court.

The records before the Court show that as Deputy Chief, Maffett received $85,000 annually for forty scheduled hours per week, at an hourly rate of $40.8655 (Dkt. #206, Exh. 2), while plaintiff as an Assistant Chief for forty-two scheduled hours per week was receiving $87,959.23 annually, at an hourly rate of $40.2743. (Id., Exh. 3).  While these records show a slight increase in Maffett's position, the hourly rate far exceeds the $37.80 earned per hour in a forty-two hour work week as reflected in Thomas Murray's pay stub, which is attached to plaintiff's Amended Damages Analysis.  (Dkt. #206, Exh. 1.A).  Moreover, plaintiff's 2009

---

[15]As discussed further below, plaintiff claims that she "did not retain copies of her weekly paychecks from August 31, 2009 – June 15, 2010[,]" and for that reason, she disclosed "former Assistant Chief Thomas Murray's paycheck as evidence of the Assistant Chiefs' weekly wage during the relevant time period." (Dkt. #211, at 9, n.6).

W-2 documents that she received $124,049.73 from the Town of Stratford as an Assistant

Chief (Dkt. #213, Exh. 2), and her 2010 W-2 shows that she received $115,494.38 from the

Town of Stratford prior to the end of her employment on or about June 15, 2010.  (Id., Exh.

3).  Additionally, plaintiff does not submit the underlying collective bargaining agreement in

which the pay scale was set, which pay scale may explain her assertion that "as unionized

employees with the same rank and level of seniority . . . [plaintiff and Thomas Murray] were

paid exactly the same annual salary and hourly wage."  (Dkt. #211, at 9)(emphasis in

original).  Also, plaintiff  did not calculate in her damages analysis the applicable retroactive

increase in salary for Assistant Fire Chiefs in the Tentative Agreement, signed September 30,

2010.  (See Dkt. #213, Exh. 4; see also Dkt. #206, Exh. 3 (salary adjustment approved

11/4/2010, effective 7/1/2009)).[16]   Accordingly, plaintiff is precluded from relying on

plaintiff's husband's pay stubs, and she is precluded from relying on pay stubs that predate

the execution of the Tentative Agreement.

Plaintiff claims that she has "several witnesses who can testify about the earnings and

work schedule of the Assistant Chiefs, including several former Assistant Chiefs and the

union's attorney[.]"  (Dkt. #211, at 9, n.6).  However, plaintiff was ordered, in both the July

2014 Ruling, 2014 WL 3700982, at *8, n. 11, *16, and in the February 2015 Ruling, 2015

---

[16]In the Tentative Agreement, the Town agreed to:

       July 1, 2009- 3% GWI will be added to the base salary of Assistant Fire
Chiefs and will be paid retroactively for hours worked to Assistant Chief Thomas
Murray . . . . Assistant Chief Ellen Murray will receive a one time gross payment of
$1500 . . . .

○ As to the grievance settlement regarding hours worked, . . . $225.00 will be put
into the base salary for Assistant Chief effective July 1, 2009 before the general
wage increase is applied.

(Dkt. #213, Exh. 4, at 6).

WL 630957, at *7, to "produce her damages calculation, with all underlying documents, in compliance with FED. R. CIV. P. 26(a)(1)(A)(iii)[.]"  Her claim of lost wages supported by another person's pay stub, and without disclosure of the governing collective bargaining agreement, or the Tentative Agreement which included a retroactive pay increase, is misleading to a jury.

As this Court has already addressed in its previous rulings, Rule 37(c) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . ., the party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c).[17]  While "the court does have discretion to impose other, less drastic sanctions[,]" Design Strategy, Inc. v. Davis, 469 F.3d 284, 298 (2d Cir. 2006), "and can afford a party the opportunity to cure defects in a damages analysis rather than imposing the drastic sanction of precluding such evidence," Garden Catering-Hamilton Ave., LLC v. Wally's Chicken Coop, LLC, No. 11 CV 1892 (JBA), 2014 WL 2765726, at *2 (D. Conn. June 18, 2014)(internal

---

[17]Rule 26(a)(1)(A)(iii) provides in relevant part:

[A] party must, without awaiting a discovery request, provide to the other parties . . . . a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . .

FED. R. CIV. P. 26(a)(1)(A)(iii).  As just indicated, a party who fails to comply with the disclosure rules may be sanctioned under Rule 37(c), which rule provides, in relevant part, that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  The Rule further provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders[,]" including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" FED. R. CIV. P. 37(b)(2)(A)(ii).

quotations & citation omitted), plaintiff was already afforded such an opportunity and still has not complied.

In determining whether to preclude the foregoing evidence, the court considers the following factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Medical & Scientific Comms., Inc., 118 F.3d 955, 961 (2d Cir. 1997)(citation omitted), cert. denied, 532 U.S. 1020 (1998). "None of these factors are dispositive and each factor is to be balanced against the others in making the determination." Powerweb Energy, Inc. v. Hubbell Lighting, Inc., No. 12 CV 220 (WWE), 2014 WL 1572746, at *4 (D. Conn. Apr. 17, 2014)(internal quotations & multiple citations omitted).

With respect to the first factor, plaintiff contends that she "did not retain copies of her weekly paychecks from August 31, 2009 – June 15, 2010[,]" and for that reason, she disclosed "former Assistant Chief Thomas Murray's paycheck as evidence of the Assistant Chiefs' weekly wage during the relevant time period." (Dkt. #211, at 9, n.6). As defendant appropriately notes, plaintiff's claim that "she simply threw her pay stubs and information with respect to her pension contributions away and did not spoilate evidence seems somewhat disingenuous and self-serving[,]" particularly when plaintiff's underlying claims in this litigation were filed with the CHRO and EEOC in February 2010 (Dkt. #29, ¶ 4), approximately six months after Maffett was hired and approximately five months before

plaintiff retired from her employment with the Town of Stratford.  (Dkt. #213, at 4, n.3).[18]

Moreover, defendant appropriately observes that "[o]ne inescapable explanation [for plaintiff

failing to provide her own pay statements] is that plaintiff's pay actually exceeded the Deputy

Fire Chief's pay during the relevant time period, and . . . plaintiff is attempting to avoid this

rather inconvenient fact."  (Dkt. #206, at 4).  As discussed above, in support of her Amended

Damages Analysis, plaintiff provided documentation evidencing that Maffett, as Deputy Chief,

as of August 31, 2009, received $85,000 annually for forty scheduled hours per week, at an

hourly rate of $40.8655 (Dkt. #206, Exh. 2), while plaintiff as an Assistant Chief for forty-two

scheduled hours per week was receiving $87,959.23 annually, at an hourly rate of $40.2743

(id., Exh. 3), which amount exceeds the $37.80 earned per hour reflected in Thomas

Murray's pay stub attached to plaintiff's Amended Damages Analysis.  (Id., Exh. 1.A).[19]

Moreover, also as discussed above, as is clear from a review of plaintiff's 2009 W-2, she

received $124,049.73 from the Town of Stratford as an Assistant Chief (Dkt. #213, Exh. 2),

and in 2010, she received $115,494.38 from the Town of Stratford prior to the end of her

---

[18]Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)(footnote & internal quotations omitted).  "The broad contours of the duty to preserve are relatively clear. That duty should certainly extend to any documents . . . made by individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.'" Id. at 217-18, quoting FED. R. CIV. P. 26(a)(1)(A).  In this case, pay statements and information regarding plaintiff's pension contributions are clearly relevant to plaintiff's damages claim, and plaintiff, who had control over such information, and who had filed with the CHRO and EEOC claims of retaliation over union negotiations with the Town, reasonably anticipated this litigation.  A district court has broad discretion to fashion an appropriate sanction in the face of a breach of a discovery obligation, including to give an adverse inference instruction at trial.  Residential Funding Corp. v. DeGeorge Fin'l Corp., 306 F.3d 99, 107 (2d Cir. 2002). However, in light of the conclusion reached below, the Court need not address the applicability of such sanction.

[19]Plaintiff attaches a "Master File Inquiry" generated by the Town's Human Resources Department that show that plaintiff's hourly rate was $37.8021 on January 1, 2009 (Dkt. #211, Exh. A; see also id., Exh. B); however, the relevant time period for this case is August 31, 2009 to June 15, 2010.

employment on or about June 15, 2010. (Id., Exh. 3).

With respect to the second factor, while evidence of plaintiff's economic loss is of substantial significance to her case, and thus cuts in favor of plaintiff, plaintiff's actual evidence is of little significance as it demonstrates that her pay as an Assistant Fire Chief actually exceeded that pay received by Maffett as a Deputy Fire Chief.  See Daigle v. Metro. Prop. & Cas. Ins. Co., 60 Conn. App. 465, 470, 760 A. 2d 117 (Conn. App. 2000)(plaintiff's claim was not substantiated by the evidence when "the plaintiff's tax returns showed an increase in net income" rather than the alleged lost wages)(emphasis in original), aff'd on other grounds, 257 Conn. 359 (2001).

The prejudice suffered by defendant in allowing evidence of Thomas Murray's earnings is substantial, in that the jury would not consider plaintiff's actual compensatory damages, as she has not submitted the difference in her pay as an Assistant Chief, and the pay for the position of the Deputy Fire Chief, and this pay stub, as discussed above, does not include the retroactive pay increase for Assistant Chiefs.

As for the last factor, the "possibility of a continuance[,]" this case has been pending for more than five years, and is trial ready.[20]  Moreover, plaintiff was already afforded the opportunity to amend her damages analysis to comply with her disclosure requirements. Additionally, plaintiff herself states that she threw away the  pay statements for the relevant time period, so that any opportunity to amend her damages analysis to comport with this Court's previous order is futile.

<u>2. CONTRIBUTION TO RETIREMENT BENEFITS</u>

In her Amended Damages Analysis, plaintiff claims compensatory damages in the

---

[20]See also note 1 & accompanying text.

amount of "$19,258.86 representing lost contributions to [plaintiff's] retiree pension benefits for work performed as Deputy Fire Chief during the 9.5-month period from August 31, 2009 to June 15, 2010, with compound annual interest accruing until the time that [plaintiff] reaches age 59 ½[.]" (Dkt. #206, Exh. 1, at 2 (emphasis & footnotes omitted)).  However, in her brief in opposition, plaintiff reveals for the first time that plaintiff "froze her pension benefit calculation on January 23, 2009[,] and at that point, her defined benefit was fixed." (Dkt. #211, at 14)(footnote omitted).  Thus, as plaintiff explains, for the entire period relevant to this case, "the Town incurred no further liability for [p]laintiff's defined benefit and therefore, would not be entitled to any offset to [p]laintiff's claim for lost retirement plan contributions[.]" (Id. at 14-15).[21] Plaintiff has failed to calculate and disclose the difference in pension benefits that Maffett received versus the difference in benefits she received during that time period, nor has she provided any foundation to establish that the pension in effect for the duration of the relevant period would not have been in effect had she served as a Deputy Fire Chief, or that she is entitled to the full amount of Maffett's pension contributions without consideration of the difference in the amount she would have contributed during the same period.[22]  As discussed above, the "'[f]ailure to provide damage computation documents may result in exclusion of damages calculation evidence . . . at trial.'"  Salvemini

---

[21]As plaintiff explains in her brief in opposition, the Town is not obligated to, nor does the Town, make contributions to the Town's Retirement Fund.  (Dkt. #211, at 17, citing Exh. C, Section IX).

[22]Defendant also contends that plaintiff needs an expert witness to testify in support of her claim that she is entitled to compound interest, and because she did not disclose an expert, she should be precluded from recovering compound interest at trial.  However, an expert is not necessary as the court may apply a compound rate of interest. See Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse, 996 F.2d 506, 520 (2d Cir. 1993)(awarding compound interest was within the district court's broad discretion); China Union Lines, Ltd. v. American Marine Underwriters, Inc., 755 F.2d 26, 30-31 (2d Cir. 1985)(same).

v. Target Stores, Inc., No. 08 CV 402 (HBF), 2012 WL 118062, at *3 (D. Conn. Apr. 3, 2012), quoting 6 James Wm. Moore, Moore's Federal Practice, at § 26.22[4][c] (3d Ed. 2010).  As with plaintiff's disclosure regarding her back pay, her disclosure regarding her lost pension benefits is insufficient to provide defendant with a basis for evaluating her lost pension benefits, if any, or a reasonable basis for calculating this category of damages.

### 3. LOSS OF EMPLOYER-OWNED VEHICLE

In her Amended Damages Analysis, plaintiff calculates her compensatory damages for the "cost of owning a vehicle similar to the one provided to . . . Maffett . . . plus the cost of gasoline . . . during the 9.5 month period from August 31, 2009 and June 15, 2010[]" as $28,743.17.  (Dkt. #206, Exh. 1, at 2).  Plaintiff arrives at this number by using the $35,000 budgeted for Shift Commander Vehicles in the municipal budget, divided into the monthly allocation in a year, multiplied by the 9.5 months at issue in this case, to arrive at $27,708.87 for the cost of the vehicle.  (Id.; see Dkt. #206, Exh. 1.D).  Plaintiff calculated the cost of gasoline by assuming 1,000 miles per month for the 9.5 months, divided by 24 mpg, for a total of 395.83 gallons, multiplied by $2.613/gallon, for a total of $1,034.30.  (Dkt. #206, Exh. 1, at 2; see Dkt. #206, Exh.1.E.).

"'The party who seeks damages has the burden not only to establish that [s]he sustained damages, but also to establish a reasonable basis for computation of those damages.'"  Cappiello v. ICD Publ'ns, Inc., 458 F. App'x 26, 29 (2d Cir. 2012), quoting Perfection Corp. v. Lochinvar Corp., 349 Ill. App. 3d 738, 285 Ill. Dec. 645, 812 N.E. 2d 465, 470 (Ill. App. Ct. 2004); see Long v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., 882 F. Supp. 1553, 1562-63 (D. Md. 1995)(following bench trial, court unable to award fringe benefits, the value for which was not established by "preponderance of the evidence . . . with

a degree of reasonable certainty").  In the pending Motion In Limine, defendant does not contest the existence of this category of damages, but rather contends that plaintiff's calculation of this category of damages "is simply incorrect and provides a windfall to . . . plaintiff." (Dkt. #206, at 10).  Defendant instead identifies four ways in which the IRS values the fringe benefit of employer provided vehicles, none of which were employed by plaintiff. (Id. at 10-11 & Exh. 4).

Plaintiff has provided the "computation" of this "category of damages claimed" and has made "available for inspection and copying . . . under Rule 34 the documents or other evidentiary material, . . . on which each computation is based." FED. R. CIV. P. 26(a)(1)(A)(iii).[23]  Accordingly, defendant's motion to preclude plaintiff's claim for the lost use of an employer-provided vehicle is denied. However, defendant is not precluded from challenging the methodology and arithmetic calculation of plaintiff's damages claim at trial.

## II. CONCLUSION

For the reasons stated above, defendant's Motion in Limine (Dkt. #205) is granted, and defendant's Motion in Limine (Dkt. #206) is granted with respect to lost pay and contribution to retirement benefits and is denied with respect to loss of employer-owned vehicle, without prejudice to defendant challenging the methodology and arithmetic calculation for this claim for damages at trial.

---

[23]In light of this conclusion, the Court need not decide whether this evidence should be precluded under Rule 37(c)(1).  See Softel, 118 F.3d at 961.

Dated this 5th day of October, 2015, at New Haven, Connecticut.


_/s/ Joan G. Margolis, USMJ_____
Joan Glazer Margolis
United States Magistrate Judge