IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| ELLEN MURRAY | 3:11 CV 629 (JGM) |
| v. | |
| JAMES MIRON, Individually, and in his official capacity as Mayor of the Town of Stratford | DATE: JANUARY 8, 2016 |

---

## RULING ON PLAINTIFF'S MOTION IN LIMINE (Dkt. #227)

Familiarity with this litigation and particularly, with this Court's rulings on motions in limine (see Dkt. #153, Ruling on Multiple Motions in Limine ["July 2014 Ruling"], 2014 WL 3700982 (D. Conn. July 25, 2014); Dkt. #219, Ruling on Defendant's Motions in Limine ["October 2015 Ruling"]) is presumed.  Consistent with this Court's Memorandum of Final Pretrial Conference, filed on October 30, 2015 (Dkt. #223; see Dkts. ##216, 222), plaintiff filed her Third Amended Complaint on November 13, 2015 (Dkt. #224), and on December 2, 2015, plaintiff filed the pending Motion in Limine. (Dkt. #227;[1] see Dkts. ##225-26).  On December 23, 2015, defendant filed his brief in opposition (Dkt. #228), and on January 6, 2016, plaintiff filed her reply brief. (Dkt. #232).[2]  A jury trial is scheduled to commence on February 2, 2016.  (Dkt. #223).

For the reasons set forth below, plaintiff's Motion in Limine (Dkt. #227) is granted such that defendant is precluded from presenting evidence or argument that the failure to promote plaintiff to Deputy Chief was not an adverse action.

---

[1] Attached is a copy of the job description for the position of Deputy Fire Chief for the Town of Stratford (Exh. A), and an affidavit of plaintiff, sworn to December 2, 2015.  (Exh. B).

[2] Attached are copies of unreported cases.

I. DISCUSSION

A. PROCEDURAL BACKGROUND

In the parties Amended Joint Trial Memorandum, filed on August 7, 2015 (Dkt. #207), defendant proposes that as part of the jury instructions on liability, the jury must decide, inter alia, "whether the failure to offer the job of Deputy Fire Chief was an adverse employment action" (id. at 101), as "plaintiff cannot support such a determination unless she can show by a preponderance of the evidence that an alleged act of retaliation is more than just de minimis." (Id. at 102-03)(footnote omitted). Defendant continues:

> Facts relevant to this inquiry involve comparing the terms and conditions of employment between the positions of Assistant Fire Chief that the plaintiff held with the Town of Stratford and the Deputy Fire Chief position at the Town of Stratford to which the plaintiff claims she should have been promoted, including the relative pay, benefits, and job security. If you conclude that the plaintiff has failed to prove by a preponderance of the evidence that the relative terms and conditions of employment, pay, benefits, and job security between the two positions was more than de minimis, then you must find for the defendant.
>
> If you find that the failure to offer the plaintiff the Deputy Fire Chief job was more than a de minimis adverse employment action, you must then consider whether the plaintiff has proven by a preponderance of the evidence that this failure to offer the plaintiff the Deputy Fire Chief job adversely influenced plaintiff's constitutionally protected conduct. If you find that the failure to offer the Deputy Fire Chief job to the plaintiff did not adversely influence her constitutionally protected conduct, then you must find for the defendant. If you find that the plaintiff has proven by a preponderance of the evidence that not being offered the job of Deputy Fire Chief adversely affected her constitutionally protected conduct, then you must consider whether not being offered the job of Deputy Fire Chief was causally related to the defendant['s] conduct.

(Id. at 103)(footnote omitted). Plaintiff objected to this instruction in the Amended Joint Trial Memorandum (id. at 103-04), and raised this issue at the final pretrial conference on October 30, 2015, at which time this Magistrate Judge asked the parties to submit in limine briefs on this issue. (See Dkt. #223, ¶ 2).

2

In the present motion, plaintiff seeks an order from the Court precluding defendant from presenting "evidence or argument that the failure to promote [p]laintiff to Deputy Chief was not an adverse employment act because it caused [p]laintiff no economic harm, and . . . finding that [p]laintiff suffered an adverse employment action as a matter of law." (Dkt. #227, at 1).  Plaintiff seeks "resol[ution]" of the issue of "whether a failure to promote qualified as an adverse employment action without regard to the economic impact of the would-be promotion."  (Id. at 4).[3]  Plaintiff contends that the promotion from Assistant Chief to Deputy Chief is a "substantial expansion in duties, authority and prestige[,]" (id. at 8), and is an "elevation from unionized labor to the management team." (Id. at 9)(footnote omitted). Additionally, such promotion includes the "use of a Town-owned vehicle for personal use[.]" (Id. at 10).

B. PENDING MOTION

"To succeed on [a] First Amendment retaliation claim brought pursuant to Section 1983, [plaintiff] must 'demonstrate that (1) the conduct at issue was constitutionally protected, (2) the alleged retaliatory action adversely affected [her] constitutionally protected conduct, and (3) a causal relationship existed between the constitutionally protected conduct and the retaliatory action.'" Murray v. Town of Stratford, 996 F. Supp. 2d 90, 115 (D. Conn.

---

[3]In the October 2015 Ruling, this Court held that plaintiff's evidence of lost wages and lost pension benefits were precluded because plaintiff "simply threw her pay stubs and information with respect to her pension benefits away[,]" the evidence demonstrates that plaintiff's pay as Assistant Fire Chief "actually exceeded that pay received by Maffett as Deputy Fire Chief[,]" the "prejudice suffered by defendant in allowing evidence of [another person's] earnings [would be] substantial, in that the jury would not consider plaintiff's actual compensatory damages, as she has not submitted the difference in her pay as an Assistant Chief, and the pay for the position of the Deputy Fire Chief, and [the offered] pay stub, . . . does not include the retroactive pay increase for Assistant Chiefs[,]" and this "case has been pending for more than five years, . . . is trial ready[, and] . . . plaintiff was already afforded the opportunity to amend her damages analysis to comply with her disclosure requirements." (At 18-20 (footnote omitted); see id. at 21-22 (regarding preclusion of evidence of lost pension benefits)).

3

2014)["February 2014 Ruling"], quoting Wrobel v. County of Erie, 692 F.3d 22, 27 (2d Cir. 2012).  In the scope of a retaliation action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)(citations & internal quotations omitted).[4]  "In the context of a First Amendment retaliation claim," such as exists in this case, the Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225-26 (2006)(citations & internal quotations omitted), cert. denied, 549 U.S. 1342 (2007).  In such a context, "adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand[,]" however, as the Second Circuit explained, this list is "certainly not exhaustive," and "lesser actions may also be considered adverse employment actions." Id. (citation & internal quotations omitted).

---

[4]As the U.S. Supreme Court explained:

> We speak of material adversity because we believe it is important to separate significant from trivial harms. . . .
>
> [The standard is phrased] in general terms because the significance of any given act of retaliation will often depend on the particular circumstances.  Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

Id. at 68-69 (multiple citations omitted)(emphasis in original).

Importantly, the Second Circuit observed that "[w]hile our cases have thus recognized a number of employment actions that we have characterized as adverse, we are guided by the general rule that whether an undesirable employment action qualifies as being adverse is a heavily fact-specific, contextual determination." Id. at 226 (citation & internal quotations omitted).[5]

Among the employment actions that the Second Circuit has characterized as adverse, is "discriminatory failure to promote[.]" Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002), citing Morris v. Landau, 196 F.3d 102, 110 (2d Cir. 1999). Specifically, the Second Circuit has characterized the failure to promote as "fall[ing] within the core activities encompassed by the term 'adverse actions.'" Id., quoting Morris, 196 F.3d at 110 (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."); see also Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003)("Similarly meritless is defendants' contention that plaintiff suffered no adverse action. Adverse employment actions include both refusals to promote and demotions. It is undisputed that defendants refused to promote plaintiff[.]"), citing Morris, 196 F.3d at 110. "Moreover, [the Second Circuit has] made clear that adverse employment actions are not limited to 'pecuniary emoluments[,]'" as "[l]esser actions such as negative employment

---

[5]In Zelnik, the Second Circuit held that the failure to afford emeritus status to that plaintiff at that particular institution was not an adverse action because the benefits of such status "carry little or no value and their deprivation therefore may be classified as de minimis." 464 F.3d at 227 (citation omitted). Notably, however, the Second Circuit observed that "because the finding of an adverse employment action is a heavily fact-specific, contextual determination, we do not determine that denial of emeritus status could never support a finding of First Amendment retaliation. Indeed, at some institutions other than [the Fashion Institute of Technology], emeritus status apparently carries with it specific and well-defined benefits." Id. at 228 (citations & internal quotations omitted). See also Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999)(questioning whether a one-day denial of a prisoner's opportunity to exercise is more than de minimis, and citing other denials of non-monetary benefits that, in some cases, amounted materially adverse actions)(citations omitted).

evaluation letters may also be considered adverse." Treglia, 313 F.3d at 720 (citations omitted). Therefore, "if sufficiently linked to retaliatory animus," the failure to promote plaintiff, even if it did not carry with it a financial benefit, "could be considered unlawful under this broad definition of adverse action." Id.

Thus, viewing the facts in the light most favorable to plaintiff at the summary judgment stage, this Court held in its February 2014 Ruling that "there is no dispute that the failure to promote plaintiff amounts to an adverse employment action." 996 F. Supp. 2d at 117, citing Mandell, 316 F.3d at 383 (citation omitted)(holding adverse employment action includes failure to promote). This holding incorporated the fact that there was no dispute among the parties that the failure to promote plaintiff amounted to an adverse employment action. (See Dkt. #75-1, at 24-30 (failing to address issue of adverse employment action at summary judgment stage); Dkt. #77-1, at 24-29 (same); Dkt. #83, at 7-9 (same); compare Dkt. #79-1, ¶ 47 with Dkt. #84, ¶ 47 (admitting plaintiff's Local Rule 56(a)1 Statement "Despite her qualifications, Murray was not promoted to the position of Assistant Chief.")). See also Gagliardi v. East Hartford Housing Auth., No. Civ. 3:03 CV 478 (EBB), 2005 WL 2177078, at *5 (D. Conn. Sept. 8, 2005)("Defendants do not dispute that adverse action was taken against the Plaintiff. . . . The Plaintiff applied for numerous promotions and was consistently denied. This constitutes adverse employment action."); see also Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007)(remanding for further proceedings on issue of causal connection between protected activity and adverse employment action, noting that defendant "does not dispute that denying an employee a promotion is an adverse employment action").

The conclusion in the February 2014 Ruling is in accord with the cases relied upon

by both plaintiff and defendant. (See Dkts. ##227-28).  Defendant is correct that there are cases in which the determination of whether the employment action was materially adverse is a "heavily fact-specific, contextual determination[,]"  Zelnik, 464 F.3d at 226 (citation omitted), because an "act that would be immaterial in some situations is material in others." Burlington Northern, 548 U.S. at 69 (citation omitted). However, the facts in Burlington Northern and in Zelnik are distinguishable from the facts in this case — in Burlington Northern, 548 U.S. at 59, the plaintiff claimed that defendant changed her job responsibilities and she was suspended for thirty-seven days without pay, and in Zelnik, 464 F.3d at 227, plaintiff was denied an "honorific" title — neither case involved a failure to promote, which employment action, as stated above, falls within "the core activities encompassed by the term 'adverse actions.'" Treglia, 313 F.3d at 720, citing Morris, 196 F.3d at 110.  In this case, plaintiff was undisputedly denied a promotion to the position of Deputy Chief. (Dkt. #207, Amended Joint Trial Memorandum, Stipulation of Fact ¶ 37; see also Dkt. #79-1, ¶ 47; Dkt. #84, ¶ 47). See Amato v. Hartnett, 936 F. Supp. 2d 416, 433 (S.D.N.Y. 2013)(detailing the objective, totality of the circumstances standard that must be applied "to prove a First Amendment retaliation claim in a situation other than the classic examples of termination, refusal to hire or promote, demotion, reduction in pay, and reprimand")(emphasis added), citing Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002); see also Gallagher v. Town of Fairfield, No. 3:10 CV 1270 (CFD), 2011 WL 3563160, at *4-5 (D. Conn. Aug. 15, 2011)(discussing determination of an adverse employment action in situations other than the "classic examples"); see Russo v. City of Hartford, 341 F. Supp. 2d 85, 98-99 (D. Conn. 2004)(noting that adverse employment actions include refusal to promote, but concluding, in the absence of argument by defendants, that a jury must decide whether the lesser

employment actions of drug testing and investigation constitutes adverse employment actions). Accordingly, defendant is precluded from presenting argument or evidence that the failure to promote plaintiff to Deputy Chief was not an adverse action.[6]

## II. CONCLUSION

For the reasons stated above, plaintiff's Motion in Limine (Dkt. #227) is granted such that defendant is precluded from presenting evidence or argument that the failure to promote plaintiff to Deputy Chief was not an adverse action.

Dated this 8th day of January, 2016, at New Haven, Connecticut.

      /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

---

[6]This Ruling addresses an element of plaintiff's cause of action, and does not address any independent claim for damages arising therefrom. Moreover, nothing in this ruling alters the conclusions reached in the October 2015 Ruling with respect to compensatory damages. (At 13-23).

On December 31, 2015, defendant filed his Motion for Leave to Supplement Joint Trial Memorandum (Dkt. #231) regarding damages and on January 4-6, 2016, counsel forwarded letters on that topic to this Magistrate Judge's Chambers. The issues raised in the December 31st motion and in these letters will be addressed during the telephonic pretrial conference scheduled for January 13, 2016. (Dkt. #233).