IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------X
                                                     :
ELLEN MURRAY                                         :    3:11 CV 629 (JGM)
                                                     :
V.                                                   :
                                                     :
JAMES MIRON, individually and in his                 :
office capacity as Mayor of the Town of              :    DATE: JANUARY 27, 2016
of Stratford                                         :
-----------------------------------------------------X
```

ORDER FOLLOWING EVIDENTIARY HEARING

Date of Hearing:    January 26, 2016

Attorneys Present:  Elisabeth Seieroe Maurer, Esq.
                    Thomas Dargon, Esq.
                    Christopher Avcollie, Esq.
                    (For Plaintiff)

                    John-Henry McKim Steele, Esq.
                    (For Defendant)

Lengthy oral argument was held regarding the issues raised in counsel's letters, dated January 20 and 25, 2016. (Dkts. ##241-43; see also Dkts. ##223, 236).

1. By agreement of counsel, counsel will submit proposed jury instructions and verdict form differentiating the claims against defendant in his official capacity and in his individual capacity. Counsel's proposed language will be submitted forthwith.

2. No witnesses, including plaintiff, shall appear in Court in Fire Department issued uniforms.

3. The Ruling on Plaintiff's Motion in Limine, filed January 8, 2016 (Dkt. #234), concluded that plaintiff satisfied the second element of her First Amendment retaliation claim in that plaintiff was "undisputedly denied a promotion to the position of Deputy Chief[,]" and

such failure to promote "falls within 'the core activities encompassed by the term 'adverse actions.'" (At 7)(multiple citations omitted).  Accordingly, at issue at the trial is whether "a causal relationship exist[s] between the constitutionally protected conduct and the retaliatory action[]" (at 3)(citation & internal quotations omitted), and damages therefrom.

  4. To the extent that plaintiff seeks reconsideration of this Court's Ruling on Defendant's Motions In Limine, filed October 5, 2015 (Dkt. #219)["October 2015 Ruling"], such reconsideration is <u>granted, but the Court adheres to its previous holding limiting plaintiff's compensatory damages claim for the reasons explained in the October 2015 Ruling.</u>

As an initial matter, plaintiff's motion for reconsideration is untimely as motions for reconsideration "shall be filed within fourteen (14) days of the filing of a decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." D. CONN. L. CIV. R. 7(c)1. Additionally, as the Second Circuit has held, "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995)(citations omitted).  Moreover, "[t]he Second Circuit has explained that the major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Crawford v. Nat'l RR Passenger Corp., No. 15 CV 131 (JBA), 2015 WL 9239743, at *1 (D. Conn. Dec. 17, 2015), <u>quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992)(internal quotations, alteration & citation

omitted).  Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided.  Shrader, 70 F.3d at 257.

The October 2015 Ruling described plaintiff's decision to offer her husband's pay statements, in lieu of her own, as evidence of the Assistant Chiefs' weekly wage during the relevant time period because she claimed that she "did not retain copies of her weekly paychecks from August 31, 2009 – June 15, 2010[,]" as "specious particularly given the evidence before the Court."  (At 15 & n.15)(internal citations omitted).  As noted in the October 2015 Ruling, in addition to simply throwing away her own pay stubs, plaintiff also "did not calculate in her damages analysis the applicable retroactive increase in salary for Assistant Fire Chiefs in the Tentative Agreement, signed September 30, 2010."[1]  (At 16)(citations omitted)(footnote in original).  Accordingly, the October 2015 Ruling held that "plaintiff is precluded from relying on plaintiff's husband's pay stubs, and she is precluded from relying on pay stubs that predate the execution of the Tentative Agreement."  (Id.).

On January 20, 2016, nine business days before trial, plaintiff forwarded to the Court a copy of her own pay statement (Exh. 143), which her counsel "subsequently . . . ascertained . . . through discovery in an unrelated matter against the Town of Stratford."  (January 20, 2016 Letter, at 2, n.2).  Plaintiff now seeks reconsideration of the October 2015

---

[1] In the Tentative Agreement, the Town agreed to:

> July 1, 2009- 3% GWI will be added to the base salary of Assistant Fire Chiefs and will be paid retroactively for hours worked to Assistant Chief Thomas Murray . . . . Assistant Chief Ellen Murray will receive a one time gross payment of $1500 . . . .
>
> ○ As to the grievance settlement regarding hours worked, . . . $225.00 will be put into the base salary for Assistant Chief effective July 1, 2009 before the general wage increase is applied.

(Dkt. #213, Exh. 4, at 6).

Ruling in that the late disclosed pay stub, which predates the Tentative Agreement and retroactive pay increase, shows, just as her husband's pay stubs showed, that plaintiff earned an hourly rate of $37.80 as Assistant Fire Chief, which is less than the $43.58 hourly rate earned by Curtis Maffett.  Plaintiff argues that, for the 41 pay periods at issue, the difference in pay between her position as Assistant Fire Chief and Maffett's position as Deputy Fire Chief was $8,886.75, which, according to plaintiff, is the same calculation used in her Amended Damages Analysis, date February 23, 2015.  (Dkt. #206, Exh. 1).

Had that been the case, the Court would agree that defendant has been on notice of the asserted difference in pay since February 2015, albeit without the requisite supporting pay stub until now.  However, plaintiff's Amended Damages Analysis reflects a difference in earnings in the amount of $14,929.12, with the Deputy Fire Chief position earning $47.51/hour.  (Dkt. #206, Exh. 1).

The October 2015 Ruling addressed the applicability of the sanctions available under Rule 37(c) of the Federal Rules of Civil Procedure, holding that:

> As this Court has already addressed in its previous rulings, Rule 37(c) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . ., the party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c). While "the court does have discretion to impose other, less drastic sanctions[,]" Design Strategy, Inc. v. Davis, 469 F.3d 284, 298 (2d Cir. 2006), "and can afford a party the opportunity to cure defects in a damages analysis rather than imposing the drastic sanction of precluding such evidence," Garden Catering-Hamilton Ave., LLC v. Wally's Chicken Coop, LLC, No. 11 CV 1892 (JBA), 2014 WL 2765726, at *2 (D. Conn. June 18, 2014)(internal quotations & citation omitted), plaintiff was already afforded such an opportunity and still has not complied.

(At 17-18)(footnote omitted).  The ruling then addressed each of the factors detailed in Softel, Inc. v. Dragon Medical & Scientific Comms., Inc., 118 F.3d 955, 961 (2d Cir.

1997)(citation omitted), cert. denied, 532 U.S. 1020 (1998), to determine whether to preclude plaintiff's evidence of her compensatory damages, and after doing so, concluded that such evidence must be precluded.[2]  To alter this conclusion in light of plaintiff's very

---

[2]Familiarity with the Court's analysis is presumed, but for the sake of clarity, the Court reiterates its findings from the October 2015 Ruling:

> With respect to the first factor, [the party's explanation for the failure to comply with the discovery order,] . . . plaintiff's claim that "she simply threw her pay stubs and information with respect to her pension contributions away and did not spoilate evidence seems somewhat disingenuous and self-serving[,]" particularly when plaintiff's underlying claims in this litigation were filed with the CHRO and EEOC in February 2010, approximately six months after Maffett was hired and approximately five months before plaintiff retired from her employment with the Town of Stratford. . . . . As discussed above, in support of her Amended Damages Analysis, plaintiff provided documentation evidencing that Maffett, as Deputy Chief, as of August 31, 2009, received $85,000 annually for forty scheduled hours per week, at an hourly rate of $40.8655, while plaintiff as an Assistant Chief for forty-two scheduled hours per week was receiving $87,959.23 annually, at an hourly rate of $40.2743, which amount exceeds the $37.80 earned per hour reflected in Thomas Murray's pay stub attached to plaintiff's Amended Damages Analysis.  Moreover, also as discussed above, as is clear from a review of plaintiff's 2009 W-2, she received $124,049.73 from the Town of Stratford as an Assistant Chief, and in 2010, she received $115,494.38 from the Town of Stratford prior to the end of her employment on or about June 15, 2010.
>
> With respect to the second factor, while evidence of plaintiff's economic loss is of substantial significance to her case, and thus cuts in favor of plaintiff, plaintiff's actual evidence is of little significance as it demonstrates that her pay as an Assistant Fire Chief actually exceeded that pay received by Maffett as a Deputy Fire Chief.
>
> The prejudice suffered by defendant in allowing evidence of Thomas Murray's earnings is substantial, in that the jury would not consider plaintiff's actual compensatory damages, as she has not submitted the difference in her pay as an Assistant Chief, and the pay for the position of the Deputy Fire Chief, and this pay stub, as discussed above, does not include the retroactive pay increase for Assistant Chiefs.
>
> As for the last factor, the "possibility of a continuance[,]" this case has been pending for more than five years, and is trial ready.  Moreover, plaintiff was already afforded the opportunity to amend her damages analysis to comply with her disclosure requirements. Additionally, plaintiff herself states that she threw away the pay statements for the relevant time period, so that any opportunity to amend her damages analysis to comport with this Court's previous order is futile.

(At 19-20)(multiple internal citations omitted).

recent disclosure, in fact, on the eve of trial, of her own pay stub, which pay stub does not include the retroactive pay increase from the Tentative Agreement, serves to reward plaintiff for her decision to "simply thr[o]w her pay stubs . . . away[,]" while claiming that she "did not spoliate evidence." (October 2015 Ruling at 18). The October 2015 Ruling already found plaintiff's actions "somewhat disingenuous and self-serving[,]" and only declined to address the issue of spoliation in light of the preclusion conclusion reached in the October 2015 Ruling. (Id. & n.18)(citations omitted). Accordingly, this Court adheres to its earlier conclusion in light of plaintiff's inexcusably late disclosure of her own pay stub, which apparently was available in another file, and the fact that although plaintiff claims that this pay stub evidences the same difference in pay detailed for defendant a year ago, the amounts she stated at the evidentiary hearing are not the amounts calculated in her Amended Damages Analysis. (Dkt. #206).

5. Reconsideration of this Court's Order (see Dkt. #223, at 4) on Plaintiff's Exhibits 41, 59, 61: Counsel agree that with respect to Plaintiff's Exhibits 59 and 61, plaintiff must establish a foundation for the documents at issue, and will redact Exhibit 61 with the exception of the dual applicants. Plaintiff's Exhibit 41 is irrelevant in light of this Court's previous rulings.

6. Objections Regarding 37 Exhibits: In accordance with the argument of counsel and/or by order of the Court, the following exhibits may be admissible, subject to appropriate foundation being established and subject to further discussion and objections being made at trial: Exhs. 10 (as narrowed by plaintiff's counsel), 18, 40, 54, 56, 58, 60, 63, 67, 68, 70, 72, 75, 82, 83, 84, 85, 102, 103, 129, 132 (without the affidavits), 133, 134, 135, 136, 139, 140, and 141.

Exhibits 28, 34, 111, 112, 119, 120 and 122 are not admissible in plaintiff's

case-in-chief.

Plaintiff has withdrawn Exhibit 131 for her case-in-chief, and defendant has no objection to Exhibit 142.

7. Hearsay Issues:

The hearsay issue was briefly addressed in the July 2014 Ruling, 2014 WL 3700982, at *12-14, which after analyzing several court decisions, held as follows:

> In this case, statements attributed to [David] Dunn [Stratford's outside labor consultant], and repeated by [Edmund] Winterbottom, [Stratford's] Director of Human Resources, are likely admissible under Federal Rule of Evidence 801(d)(2), who, given their positions, presumably are defendant Miron's agents, with regard to a matter within the scope of their agency or employment.

Id. at 14 (citation omitted).

At oral argument, defense counsel cited U.S. v. Rioux, 97 F.3d 648 (2d Cir. 1996), for the proposition that statements by Stratford employees would not be admissible under Rule 801(d)(2)(D) against defendant Miron. The defendant in Rioux was the High Sheriff of Hartford County who had been convicted, inter alia, of a fraudulent scheme to commit extortion by threatening to suspend or terminate his Deputies and Special Deputies if they did not contribute to his re-election campaign and pay their association dues. Id. at 652-53. On appeal, defendant questioned the admission of testimony from Deputies and Special Deputies concerning statements made by their supervisors regarding payment of the association dues, arguing that this testimony did not fall under the hearsay carve-out under Rule 801(d)(2)(D). Id. at 660. Under this rule, a statement is not hearsay when made "by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]" In Rioux, the Second Circuit adopted the following three part test to establish that a statement is not hearsay: "(1) the existence of the agency relationship, (2) that the

statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency."  97 F.3d at 660 (citation & internal quotations omitted).

      As to the first element, the Second Circuit disagreed with defendant's argument that the defendant needed to "control the daily tasks of the declarant[,]" in that the supervisors were "hand-picked" by defendant and "served at his pleasure[,]" and they "received their instructions through Rioux himself or the Chief Supervisory Special Deputy Sheriff, a position Rioux created."  Id.  And as to third element, the Second Circuit similarly disagreed with defendant's argument that the supervisors were not responsible for employment decisions, holding that "the declarant need not be the 'final decisionmaker' on employment matters for his statement on those matters to be deemed within the scope of his agency.  Rather, he need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement."  Id. at 660-61 (citations omitted).  Thus, the Rioux decision certainly supports the admission of Winterbottom's statements, as Winterbottom served on the committee that interviewed plaintiff.  Similarly, upon proper foundation outlined above, the Rioux decision also supports the admission of Dunn's statements.  Id.  See also Forrester v. Prison Health Serv., No. 12-CV-363 (NGG)(LB), 2015 WL 1469737, at *1, 10 (E.D.N.Y. March 30, 2015)(in employment action brought by medical staff coordinator at a prison, statement of Deputy Director of Mental Health was admissible under Rule 801(d)(2)(D) regarding conversation with Director of Operations, relying on Rioux); Cowan v. City of Mount Vernon, 95 F. Supp. 3d 624, 630-31, 648-49 (S.D.N.Y. 2015)(in an employment action, statements of city's Commissioner of Human Resources about the plaintiff's allegations were admissible under Rule 801(d)(2)(D) against the three defendants – the city, plaintiff's direct supervisor who was the director of the youth program by which plaintiff was employed, and the Executive Director of the city's Youth Bureau, relying on

Rioux); Lipton v. County of Orange, 315 F. Supp. 2d 434, 437-38, 440-42, 448-50 (S.D.N.Y. 2004)(in Section 1983 action brought by inmate for alleged retaliation for his public criticism of police, including transfer from county jail to infamous Riker's Island, correctional officers' comments to plaintiff that his transfer was a "present from" the county corrections administrator were admissible against him, the county Sheriff, and the assistant corrections administrator).

    Dated at New Haven, Connecticut, this 27th day of January, 2016.

                                        __/s/ Joan G. Margolis, USMJ__
                                        Joan Glazer Margolis
                                        United States Magistrate Judge