IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                                 :
ELLEN MURRAY                                     :       3:11 CV 629 (JGM)
                                                 :
v.                                               :
                                                 :
JAMES MIRON, Individually, and in his            :
official capacity as Mayor of the Town of        :       DATE: APRIL 19, 2016
Stratford                                        :
-------------------------------------------------x
```

RULING ON PLAINTIFF'S MOTION FOR A NEW TRIAL (Dkt. #270)

Familiarity with this litigation is presumed.[1]  On February 2, 2016, the jury trial in this case commenced, and was held on February 3, 4, 9, 10, 11, and 12, 2016.[2] (Dkts. ##250, 252, 254, 257-59).  On the seventh trial day, February 12, 2016, the jury returned a verdict in favor of defendant, finding that plaintiff did not prove by a preponderance of the evidence that her First Amendment-protected union affiliation and/or union activities were a substantial motivating factor in defendant James Miron's decision not to promote her to the position of Deputy Fire Chief.  (Dkt. #265).  Judgment entered on February 26, 2016.  (Dkt. #266).

On March 11, 2016, plaintiff filed the pending Motion for a New Trial, with brief and

---

[1] See, e.g., Murray v. Town of Stratford, 996 F. Supp. 2d 90 (D. Conn. 2014); Murray v. Town of Stratford, Ruling on Multiple Motions in Limine, 2014 WL 3700982 (D. Conn. July 25, 2014)["July 2014 Ruling"]; Murray v. Town of Stratford, Ruling on Plaintiff's Motion for Reconsideration and on Plaintiff's Motion for Leave to Amend Complaint, 2015 WL 630957 (D. Conn. Feb. 12, 2015); Murray v. Miron, Ruling on Defendant's Motions for Sanctions, 2015 WL 4041340 (D. Conn. July 1, 2015); Murray v. Miron, 11 CV 629 (JGM), Ruling on Defendant's Motions in Limine, filed October 5, 2015, Dkt. #219 ["October 2015 Ruling"]; Murray v. Miron, Ruling on Plaintiff's Motion in Limine, 2016 WL 96140 (D. Conn. Jan. 8, 2016).

[2] The jury trial was postponed on Friday, February 5, and Monday, February 8, due to inclement weather.

affidavit in support. (Dkt. #270).[3]   Twenty days later, defendant filed his objection to plaintiff's motion.  (Dkt. #272).[4]  Two weeks later, on April 14, 2016, plaintiff filed her reply brief. (Dkt. #273).

For the reasons stated below, plaintiff's Motion for a New Trial (Dkt. #270) is <u>denied</u>.

<u>I. STANDARD OF REVIEW</u>

Rule 59(a)(1)(A) permits a court, on motion, to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" One of the reasons for which a new trial may be granted is if the verdict is against the weight of the evidence.  <u>Raedle v. Credit Agricole Indosuez</u>, 670 F.3d 411, 417 (2d Cir.), <u>cert. denied</u>, 133 S. Ct. 789 (2012); <u>see also DLC Mgmt Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 133 (2d Cir. 1998)(citations omitted). "[A] new trial may be granted even if there is substantial evidence supporting the jury's verdict[,]" and "a trial judge is free to weigh the evidence [herself], and need not view it in the light most favorable to the verdict winner." <u>DLC Mgmt Corp.</u>, 163 F.3d at 134 (citation omitted). Thus, "[a]lthough a trial court is afforded considerable discretion under Rule 59(a), a motion for a new trial should be granted only when, in the opinion of the district court, 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" <u>Castelluccio v. Int'l Bus. Machines Corp.</u>, No. 09 CV 1145 (TPS), 2014 WL 3696365, at *8 (D.

_____

[3]Attached to plaintiff's motion are excerpts from the trial transcript of the testimony of defendant Miron, dated February 11, 2016 (Exh. A); excerpts from the trial transcript of the cross examination testimony of plaintiff, dated February 10, 2016 (Exh. B); and a copy of the trial transcript of counsel's closing statements, dated February 12, 2016 (Exh. C).

Attached to the affidavit of plaintiff's counsel are copies of Plaintiff's Exhibits ["P's Exh."] 62, 103, 102, 40, 17, 45, 133, 134, 136, 5 and 2, and a copy of Defendant's Exhibit ["D's Exh."] A.

[4]Attached are copies of D's Exhs. F-G.

Conn. July 23, 2014), quoting Song v. Ives Labs, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)(alteration in original); DLC Mgmt Corp., 163 F.3d at 133, also quoting Song. The "granting [of] a new trial is extraordinary relief which is properly granted only when circumstances are exceptional." SEC v. Tourre, No. 10 Civ. 3228 (KBF), 2014 WL 61864, at *3 (2d Cir. Jan. 7, 2014), citing Raedle, 670 F.3d at 417-18 & DLC Mgmt Corp., 163 F.3d at 133-34.

## II. DISCUSSION

Plaintiff "takes issue with the jury's verdict, as to liability only," on her claim for "unlawful First Amendment retaliation against James Miron, in his official capacity as Mayor of the Town of Stratford, pursuant to 42 U.S.C. § 1983." (Dkt. #270, Brief at 1). Plaintiff seeks an order from the Court granting a new trial on the official capacity claim against defendant Miron on grounds that the jury's verdict is "against the weight of the evidence as to the proof supporting the causation element of her First Amendment retaliation claim by way of temporal proximity," and defendant's counsel "engaged in several instances of prejudicial misconduct in the presence of the jury." (Id. at 2; see also Dkt. #273, at 1-4).

Defendant responds that the verdict was in conformity with the weight of the evidence (Dkt. #272, at 3-9); references to plaintiff's wealth, compensation and retiree pension were invited by plaintiff (id. at 9-16); and plaintiff attempted to manipulate the system by failing to call a witness from the Carl Holmes Institute. (Id. at 16-17).

### A. VERDICT AGAINST THE WEIGHT OF THE EVIDENCE

The jury instructions directed the jury to determine whether plaintiff proved by a preponderance of evidence that her protected union membership and/or activities were a substantial motivating factor in defendant's decision to refuse to promote plaintiff to the

3

position of Deputy Fire Chief. (Dkt. #264, at 34). The jury was instructed to decide whether plaintiff established, "by a preponderance of the evidence, a causal connection between the protected union membership and/or activities and the failure to promote her to Deputy Fire Chief[.]" (Id. at 34-35).  As plaintiff correctly observes, the jury was instructed that

> In proving the required causation indirectly, plaintiff may rely on the closeness in time of plaintiff's union membership and/or activities and the failure to promote her. . . . The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected union membership and/or activities were closely followed in time by the adverse action.  There is no "bright line" to define the outer limits beyond which the relationship in time between the two events is too far removed to establish a causal relationship between the exercise of an employee's first amendment rights and the allegedly retaliatory action.  This is a factual issue to be determined by you, the jury, based upon the entire record.

(Id. at 35-36)(emphasis omitted).[5]

Plaintiff is correct that the evidence presented established a temporal proximity between the events involving the union and defendant Miron's decision to offer the position of Deputy Chief to Curtis Maffett. Specifically, plaintiff established that in February 2009, Local 998, acting on behalf of plaintiff and other affected union members, filed a municipal prohibited practice ["MPP"] complaint against the Town of Stratford with the Connecticut State Board of Labor Relations (Dkt. #270, Exh. A, Cross-Exam'n at 17); in connection with this MPP complaint, defendant Miron was called to testify, in person, at the Connecticut State Board of Labor Relations on July 14, 2009 (id. at 19); two days later, on July 16, 2009, plaintiff was interviewed for the position of Deputy Fire Chief by a three-person oral panel (D's Exh. A); on July 24, 2009, Local 998, acting on behalf of plaintiff and other affected

---

[5]See Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011)("[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'")(citations omitted).

union members, filed another MPP complaint against the Town of Stratford, which sought "an order to the Town to cease and desist its retaliation towards [Assistant Chiefs] for joining IAFF Local 998[]" (P's Exh. 133); on July 24, 2009, Local 998, again acting on behalf of the affected union members, filed a second MPP complaint against the Town of Stratford, which alleged that during the Assistant Chiefs' negotiation, the Town of Stratford engaged in "[a]ntiunion animus[]" and "[b]argaining in bad faith" by "[i]nterfering, restraining or coercing employees in the exercise of [ ] rights[]" (P's Exh. 134); on August 13, 2009, defendant Miron provided Local 998 supplemental proposed revisions to the collective bargaining agreement relating to the pay and benefits for the Assistant Chiefs of Fire Suppression (P's Exh. 136); and on August 21, 2009, defendant Miron offered the position of Deputy Fire Chief to Curtis Maffett (P's Exh. 5).

At the close of the trial, in denying Defendant's Rule 50 Motion for Judgment as a Matter of Law (Dkt. #260), the Court recognized that defendant Miron had testified that the negotiations regarding the Assistant Chiefs' pay and benefits and the Deputy Chief hiring process were occurring "simultaneously." (See Dkt. #270, Exh. A, Direct Exam'n at 27).[6] However, there was no evidence that plaintiff herself had participated in the union activity and negotiations; to the contrary, plaintiff testified that she was not part of the contested negotiations.[7] Moreover, the causation inquiry did not rise and fall with temporal proximity. As the Court also instructed the jury:

---

[6]In her reply brief, plaintiff points out that the Town and the union were engaged in negotiations through August 13, 2009 and Curtis Maffett was hired just a few days later. (Dkt. #273, at 6-7).

[7]In her reply brief, plaintiff objects to defendant's reference to testimony without providing specific citations to the record. (Dkt. #273, at 4-5). The Court has not ordered the transcript, and to the extent there are a few references to testimony at trial in this ruling, the Court relies upon its detailed notes.

> . . . to prove this causal relationship, plaintiff must establish by a preponderance of the evidence that her union membership and/or activities were a substantial motivating factor in defendant's decision not to offer her the job of deputy fire chief. Plaintiff does not have to prove that her union membership and/or activities were the only reason that defendant made his decision. Plaintiff need only prove that her union membership and/or activities were a substantial consideration in the mind of defendant that made a difference in or played a part in his decision. A motivating factor is a factor that plays a substantial role in a person's decision to undertake a certain action. As I just said, a substantial motivating factor need not be the sole factor that drove defendant's conduct. Defendant may have taken action for many different reasons, so an improper motivating factor can be one of several factors and can be joined with a lawful factor. You may find more than one factor played a role in defendant's conduct. If so, then you must determine whether one of the motivating factors was plaintiff's protected union membership and/or activities.

(Dkt. #264, at 36-37)(emphasis omitted). The weight of the evidence did not support a conclusion that defendant Miron had animosity or ill-will towards plaintiff because she belonged to a group that sought to rejoin the union, nor did it support a conclusion that the fact that she belonged to this group was a substantial motivating factor in defendant Miron's decision not to promote plaintiff. It was undisputed that plaintiff was qualified for the job (see Dkt. #253, ¶ 33; Dkt. #264, at 14, ¶ 33), and even if the jury believed plaintiff's testimony that her "union association or membership was part of the process the whole way through"[8] leading up to her interview with defendant Miron, the evidence showed that plaintiff made it through each stage of the interview process, including the questionnaire stage in which plaintiff was asked about her union membership, and an appearance before the interview panel, which included Edmund Winterbottom, who plaintiff believed made a threat against the Assistant Fire Chiefs for wanting to rejoin the union in 2008.

Despite the foregoing, it was undisputed that plaintiff was one of the final three

---

[8]See note 7 supra. See also Dkt. #270, Exh. B, at 3.

6

candidates who were given a final interview with defendant Miron.  (Dkt. #253, ¶ 23; Dkt. #264, at 11, ¶ 23).  Defendant Miron testified that he was "proud" of plaintiff, and he was "impressed by her ability to lead mostly men[]" and garner their respect in her position. (Dkt. #270, Exh. A, Direct Exam'n at 43).    It was also undisputed that for defendant Miron, the final interview with him was about finding "the right fit for his administration" (Dkt. #253, ¶ 25; Dkt. #264, at 11-12, ¶ 25; Dkt. #270, Exh. A, Direct Exam'n at 45-46), and prior to the interview, he thought his preference would have been plaintiff, but, simply put, plaintiff did not interview well.  (Dkt. #270, Exh. A, Direct Exam'n at 32, 42-47, 52). Miron described her interview as "the most disappointing by far[]" particularly in light of the fact that he had known her for such a long time.  (Id. at 42).  He explained that during the interview, she appeared not to want the job, or already assumed that the job was hers, whereas Curtis Maffett was engaging, wanted the job, and expressed a commitment to relocate for the position. (Id. at 44). Notably, on cross examination, plaintiff's counsel did not challenge defendant Miron's testimony about plaintiff's interview performance, and, in fact, did not even ask defendant Miron about the content of the interview at all.   Conversely, when defense counsel asked plaintiff about the interview, she testified that she answered the questions posed to her and did not offer "ideas" or "solutions" because the interview process did not allow for anything other than answering the specific questions asked. (Dkt. #270, Exh. B, Cross Exam'n at 27-29).

The jury was entitled to credit defendant Miron's testimony that he did not hire plaintiff because she interviewed poorly, and not because of her union involvement.[9]   In the

---

[9]Additionally, plaintiff testified on direct examination that defendant Miron asked her if she could supervise her husband, which plaintiff took as a "reference" to the fact "that [her] husband was in a union" and she "never had a problem supervising anyone in the union."  See note 7 supra. On cross examination, plaintiff acknowledged that Miron did not say anything about being able to

words of the Second Circuit, "our precedent counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness's credibility[.]'" <u>Raedle</u>, 670 F.3d at 418, <u>quoting DLC Mgmt. Corp.</u>, 163 F.3d at 134.  Stated another way, there is a "high degree of deference accorded to the jury's evaluation of witness credibility[.] . . . [J]ury verdicts should be disturbed with great infrequency[,]" and "generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." <u>Raedle</u>, 670 F.3d at 418-19.   In light of the evidence at trial, this Court cannot find that the jury's verdict went against the weight of the evidence.

### B. PREJUDICIAL CONDUCT

"[I]n evaluating a motion for new trial based on counsel's alleged misconduct, the court 'must consider such a claim in the context of the trial as a whole, examining, among other things, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments.'"  <u>Graham v. City of New York</u>, No. 08 CV 3518 (MKB), 2015 WL 5258741, at *9 (E.D.N.Y. Sept. 10, 2015), <u>quoting Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.</u>, 955 F. Supp. 2d 118, 144 (E.D.N.Y. 2013)(additional citations omitted). It is within the court's "sound discretion" to determine if counsel's conduct "was so improper as to warrant a new trial[.]" <u>Id.</u> (citations omitted).

---

supervise her husband because he was in a union, he only asked about her ability to supervise her husband. (Dkt. #270, Exh. B, Cross Exam'n at 31-34). Plaintiff also acknowledged that while she had previous experience supervising Thomas Murray, those incidences occurred before they were married.  (<u>Id.</u> at 34).

Thus, there is no merit to plaintiff's argument in her reply brief that defendant Miron's testimony about plaintiff's poor performance at her final interview was a "cover up" for "an impermissible motive and anti-union animus[.]" (Dkt. #273, at 7-8).

## 1. REFERENCES TO PLAINTIFF'S WEALTH, COMPENSATION, & PENSION

Plaintiff contends that defense counsel's "improper, offensive, and wholly irrelevant comments concerning [p]laintiff's wealth, previous levels of compensation, and retiree pension from the Town of Stratford resulted in the presentation of prejudicial information to the jury which unduly impassioned and influenced the factfinder, thereby justifying a new trial[.]" (Dkt. #270, Brief at 11; see also Dkt. #273, at 8-9).   Defendant counters that defendant was entitled to challenge plaintiff's assertion that she was "pursuing this case on 'principle.'" (Dkt. #272, at 10).

By way of background, on February 2, 2016, prior to jury selection, plaintiff notified the Court and defense counsel that she was withdrawing her claim for compensatory damages and would only be pursuing claims for nominal and punitive damages at trial.   (See Dkt. #270, Brief at 12).   That said, on cross examination, defense counsel asked plaintiff about the offer letter to Curtis Maffett, in which his starting salary was listed as $85,000, when she was making $124,000 as an Assistant Fire Chief in 2009.   (Dkt. #270, Exh. B, Cross-Exam'n at 17-18).   He then asked plaintiff to confirm if she had made $114,000 in the first five-and-a-half months of 2010, in response to which plaintiff responded in the affirmative, with a clarification.[10]   (Id. at 18-19).

While plaintiff's counsel now argues that these questions improperly placed "irrelevant and prejudicial information in front of the jury" and "grossly mischaracterized the compensation earned by [p]laintiff in the 2009 and 2010 years[]" (Dkt. #270, Brief at 15-16), at no time did plaintiff's counsel object to this line of questioning at the trial.   In the absence

---

[10]Plaintiff also explained to the jury that her goal in taking a job for which the salary was lower was "to get off the swing shift[,]" to avoid working at nights and on weekends, even if that meant earning less money.   (Id. at 20-21).

of an objection at trial, plaintiff has no grounds to assert such objection now.  FED. R. EVID. 103(a)(1)(A)(a party wishing to preserve an objection to the admission of testimony must "timely object[]"); see Marcic v. Reinauer Transp. Co., 397 F.3d 120, 124 (2d Cir. 2005)("In the case of unpreserved error, a new trial will be granted only for error that was so serious and flagrant that it goes to the very integrity of the trial.")(citations & internal quotations omitted).

      After inquiring about plaintiff's income, defense counsel then inquired into why plaintiff's claim was for nominal damages only; plaintiff responded that she was in this "for the principle" because defendant Miron "stopped [her] career dead in its path." (Dkt. #270, Exh. B, Cross Exam'n at 20-21).  This testimony violated the Court's multiple rulings precluding plaintiff from asserting that she would have been promoted to Fire Chief of the Town of Stratford.  (See October 2015 Ruling at 3-8, citing 2014 WL 3700982, at *6 (plaintiff is precluded from presenting evidence of hiring pattern and practice); 2015 WL 630957, at *5, n.7 (pattern and practice evidence is not relevant to the remaining claims in this case); 2015 WL 4041340, at *9 (this Court "has already held" that pattern and practice allegations are not relevant under FED. R. EVID. 401)).  At this point, plaintiff objected to the line of questioning on the grounds that such allegation had been made in the case but had been thrown out, and the Court sustained the objection as to that pending question. (Dkt. #270, Exh. B, Cross Exam'n at 21-23).  Defense counsel then confirmed, consistent with plaintiff's earlier testimony on direct examination, and in opposition to plaintiff's testimony that her career was "stopped[,]" that she is currently the Fire Chief of Naugatuck. (Id. at 24). As soon as defense counsel asked the very next question about the amount of plaintiff's retirement

pension,[11] plaintiff objected and the Court sustained plaintiff's objection to such testimony "in light of the fact that the plaintiff is only seeking nominal damages." (<u>Id.</u> at 24-25).[12] Plaintiff did not seek a curative instruction (<u>see id.</u>), and when charged, the jurors were instructed that what the lawyers say about the facts is not evidence. (Dkt. #254, at 3). Thus, in light of the "totality of the circumstances" under which defense counsel engaged in this line of questioning, "and the manner in which the parties and the court treated the comments[,]" <u>Graham</u>, 2015 WL 5258741, at *9 (citations omitted), the Court, in exercise of its "sound discretion[,]" cannot conclude that defense counsel's conduct "was so improper as to warrant a new trial[.]" <u>Id.</u> (citations omitted).

<u>2. REFERENCE TO ABSENT WITNESS AT TRIAL</u>

During his summation, defense counsel argued to the jury as follows:

> The gentleman yesterday from Dillard University didn't know about the Carl Holmes Institute and was never asked by plaintiff's counsel to check for the Carl Holmes Institute. Why? Plaintiff's counsel didn't want that answer. Plaintiff's counsel wanted you to hear only that Dillard University confers bachelor's degrees in arts and science. There was no effort undertaken by plaintiff's counsel to get anybody here from the Carl Holmes Institute to testify as to whether Mr. Maffett was or was not a student for these smaller certificate type programs.

---

[11]Specifically, defense counsel asked, "So after retiring from the Town of Stratford . . . your retirement pension from the Town is $92,000 a year, isn't it?" (<u>Id.</u> at 24).

[12]Moreover, the Court's ruling in sustaining plaintiff's objection was consistent with the July 2014 Ruling precluding evidence of Thomas Murray's pension. 2014 WL 3700982, at *3-4.

In responding to plaintiff's objection to defense counsel's inquiry into plaintiff's pension benefits from the Town of Stratford, defense counsel stated that the Court's earlier "order dealt only with Thomas Murray." (Dkt. #270, Exh. B, Cross Exam'n at 24). Plaintiff contends that in so stating, defense counsel improperly alerted the jury to the fact that Thomas Murray was also receiving a retiree pension. (Dkt. #270, Brief at 19). However, during his testimony on direct, Thomas Murray explained that one of the proposed changes to the Assistant Fire Chiefs' contract made by the Town would have "greatly diminished" their pension benefits. Thus, the jury was aware that Thomas Murray was retired, and as a retired Assistant Fire Chief, he would be receiving a pension.

(Dkt. #270, Exh. C at 39-40).  Plaintiff contends that defense counsel's closing summation "improperly posits to the jury that [p]laintiff's decision not to call a witness from the Carl Holmes Executive Development Institute . . . suggests that [p]laintiff's counsel was concealing information from the jury."  (Dkt. #270, Brief at 26; see also Dkt. #273, at 10).

"[A] missing-witness instruction is generally inappropriate when an uncalled witness was equally available to both sides." United States v. Blash, 43 F. App'x 399, 401 (2d Cir. 2002), citing United States v. Adeniji, 31 F.3d 58, 65 (2d Cir. 1994).  When the witness is "equally available[,]" United States v. Caccia, 122 F.3d 136, 139 (2d Cir. 1997), such witness is referred to as an "uncalled witness[.]" Id. (citations omitted); see United States v. Pierce, 785 F.3d 832, 843-44 (2d Cir.), cert. denied, 136 S. Ct. 172 (2015).  In such instances, "[i]t is nonetheless within the trial court's discretion to decide whether to '. . . give no instruction [to the jury] and leave the entire subject to summations . . . .'" Blash 43 F. App'x at 401, quoting Caccia, 122 F. 3d at 139.  See also United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004), cert. denied, 554 U.S. 990 (2005), quoting United States v. Mittelstaedt, 31 F.3d 1208, 1215 (2d Cir. 1994)(additional internal quotations & citations omitted)(the Second Circuit is "particularly disinclined to second-guess [the trial court's] decisions where, as in this case, 'a judge refrains from commenting on the inference to be drawn on the facts before the jury and allows counsel instead to argue the inference.'").

Just as plaintiff decided to neither call a witness from the Carl Holmes Institute, nor to ask the Registrar of Dillard University to check for records from the Carl Holmes Institute, see United States v. Krangle, 142 F. App'x 504, 506 (2d Cir.)(decision to call various witnesses falls squarely within the ambit of trial strategy), cert. denied, 546 U.S. 1079 (2005), plaintiff decided not to address defense counsel's argument in plaintiff's rebuttal

summation.   Additionally, plaintiff's counsel neither objected to the statements at issue nor sought a curative instruction subsequent to the closing argument.   Marcic, 397 F.3d at 124 ("Where claimed error was not objected to contemporaneously, appellant faces an even heavier burden[]" since "the failure to object deprives the trial court of the opportunity to correct the error during trial[.]").   Among the exhibits before the jury were a copy of Curtis Maffett's employment application with the Town of Stratford in which Curtis Maffett represented that he graduated from Dillard University in 1999 with a "Special Diploma" (P's Exh. 2), a copy of a "Special Diploma" awarded to Curtis Maffett by Dillard University on May 29, 1999, "upon the recommendation of the Board of Directors of the 'Carl Holmes' Executive Development Institute" (D's Exh. F), and a copy of a Certificate of Award for Curtis Maffett, dated May 29, 1999, and issued by Dillard University, Office of Continuing Education.   (D's Exh. G).   Based on the testimony and documentary evidence before the jury, there was substantial support for the jury's verdict.   The Court cannot conclude that defense counsel's argument in his closing so prejudiced plaintiff's case so as to justify a new trial.

### III. CONCLUSION

For the reasons stated above, plaintiff's Motion for a New Trial (Dkt. #270) is denied. Dated this 19th day of April, 2016, at New Haven, Connecticut.


 /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

13